## Brown *versus* Finney.

53  373
166  20

1. Brown and Finney met accidentally; Brown said he could sell coal as cheaply in Cincinnati as at Pittsburgh; Finney said he would take 100,000 bushels at Cincinnati at sixteen cents, Pittsburgh price; Brown said he was to be paid cash, and for detention of the barges and have security for their return; Finney replied "Certainly," prepared a memorandum of the agreement and drew his check to Brown for the price of the coal. Brown said, "I'll have the papers drawn to-morrow." Finney called next day on Brown about the agreement, disputes arose, the agreement was not put into writing, and nothing further was done. The defendant asked the court to charge, "If the terms were not finally arranged the first day but the entire contract was to be arranged and reduced to writing the next day, there was then no binding contract," &c. The court affirmed this, adding if it is intended by the proposition that "when a contract is made on terms proposed at the time, but the adjustment of the terms—and reducing them to writing postponed—and then neglected or refused to be done, the contract is not binding; I would answer in the negative." *Held*, that the answer was error, being calculated to mislead the jury, in assuming that the contract was complete except putting it into writing.

2. Every loose conversation is not to be turned into a contract, although the parties may seem to agree.

3. When people meet to do business they are presumed to mean what they propose, and expect to be taken up; but a proposition made and accepted, where there was no expectation of contracting, should be carefully weighed with all the circumstances.

ERROR to the Court of Common Pleas of *Allegheny county.*

In the court below Robert Finney brought an action of assumpsit against William H. Brown, to December Term 1864, and declared on a contract for the delivery in Cincinnati of 100,000 bushels of coal.

To prove his case Finney gave evidence that on the 22d of November 1864, he and Brown with others were in an eating-house in Pittsburgh; whilst waiting for dinner, the conversation turned on the prices of coal; Brown, who was a coal merchant, said he could deliver coal as cheaply in Cincinnati as in Pittsburgh, that he could deliver there at sixteen cents per bushel. Finney asked him if he would deliver him 100,000 bushels at Cincinnati at that price Brown said he would and that it was to be cash, to which Finney said "Certainly," and drew a check for $16,000 on his banker. Brown said it made no difference about the check, he would prepare the papers next day; and said, also, that he must have $10 per day per barge for the time they should be detained after delivering the coal. The coal was then in

barges ready to start. One of the witnesses said that he thought, from his conversation, that Finney "bantered" Brown. There was evidence also, on the part of Brown, that he said, in that conversation, that Finney would have to be in Cincinnati to receive the coal and have it promptly unloaded and return the barges, and to carry out that, Brown required security; that a memorandum was prepared by Finney "in the shape of a receipt," which Brown refused to sign: the matter was talked over and it was agreed that Finney should meet Brown next day, at the office of Brown, who said he would then have the article of agreement ready. On the next day Finney went to Brown's office, where there was something said about the contract and the security, which Brown said should be in the sum of $25,000. Finney said he would give him a check for the money; Brown replied that he did not want the money for the barges, but security for their return, and that Finney had proposed to give as sureties Mr. Shoenberger or Mr. Bagley; Finney then said, "You refuse to deliver the coal." Brown said, "I did not refuse to deliver the coal, but I want security that you will fulfil your part of the agreement." The parties became irritated and separated, and Finney brought suit soon after.

The 1st and 2d points of the defendant were:—

1. If the jury believe that all the terms of the contract were not finally arranged the first day, but that the entire contract was to be arranged and reduced to writing the next day; there was then no binding contract between the parties, and no contract having been proved to have been made the next or any subsequent day, the plaintiff must fail in this action.

2. That either party in arranging the terms of a contract has the right to require that it be reduced to writing and signed before becoming obligatory, and in such case the contract does not become binding on either party unless reduced to writing and signed by him, or unless he refused to sign it when tendered by the other party.

To which the court (Mellon, A. J.) answered:—

"1. This 1st point is answered in the affirmative, if it is intended thereby to assert that if all the material terms of the contract were not agreed to on the first day, or afterwards, the plaintiff must fail in this action. In other words, a contract to be binding, or to constitute a contract at all, must be an entire or complete thing—a consenting or agreement by the parties—its terms may be few or many. Whatever they are, if terms are required by either party before agreeing to the contract, they are material and essential, and where any one of the required terms is not agreed on, the contract is not made and none exists.

"But if it is intended by this proposition that where a contract or agreement is made on terms proposed at the time, but the

[Brown *v.* Finney.]

adjustment of these terms in the contract, and reducing them to writing is postponed till the next day, and then neglected, or refused to be done by either party, that in such case the contract is not binding, I would answer in the negative. To allow the non-reduction to writing, or non-arrangement of the terms of a contract after it was entered into, to work its rescission, they should be made part of its terms, at the time it was made, conditioned not to be binding unless these things were done. The arrangement of the terms which have been once agreed to is not essential unless made so. A contract entered into with the proviso when reduced to writing, and *the arrangement of the terms hereafter agreed on*, would not be perfect or binding until the arrangement was made and written, but a contract and its terms agreed on and their adjustment postponed to another time, and one of the parties afterwards refusing to assent to any adjustment, he would not be relieved because such was not made a condition of his being bound when the contract was made.

" 2. This point is partly answered in my answer to the 1st. Either party, in making a contract, can make it conditional or dependent, upon all being reduced to writing: he has a perfect right to require that it shall be put in writing before becoming binding upon him, so that he may see its terms in a definite shape; but this must be a condition or one of the terms of the contract itself, or a reservation on his part in entering into it. If it is intended by this 2d point that after a contract is made and its terms subsequently come to be arranged for the purpose of carrying it into execution or otherwise, either party may then require it to be reduced to writing or be off, I would answer the point in the negative. How the fact is in the present case is, of course, for the jury."

There was a verdict for the plaintiff for $2000.

The answers of the court were assigned for error.

*H. Burgwin*, for plaintiff in error, cited Keeler *v.* Schmertz, 10 Wright 135; Robison *v.* Tyson, Id. 286.

*Hamilton & Acheson*, for defendant in error, cited 1 Parsons on Cont. 8; 2 Id. 188; Chitty on Cont. 365, 366, 631; Cort *v.* Railway Co., 6 Eng. L. & Eq. R. 230, 235; Borden *v.* Borden, 5 Mass. R. 67; Hibblewhite *v.* McMorine, 5 M. & W. 462; Sedg. on Damages 260 *et seq.*; Smethurst *v.* Woolston, 5 W. & S. 106.

The opinion of the court was delivered, January 17th 1867, by

THOMPSON, J.—The 1st and 2d points of the defendant below were entitled to clear affirmative answers. They are,

" 1. If the jury believe that all the terms of the contract were

[Brown *v.* Finney.]

not finally arranged the first day, but that the entire contract was to be arranged and reduced to writing the next day ; there was then no binding contract between the parties, and no contract having been proved to have been made the next day, or any subsequent day, the plaintiff must fail in this action.

"2. That either party in arranging the terms of a contract has the right to require that it be reduced to writing and signed before becoming obligatory, and in such case the contract does not become binding on either party unless reduced to writing and signed by him, or unless he refused to sign it when tendered to him by the other party."

It is true the learned judge did affirm these points, but with qualifications amounting to a substantial negation of them. The testimony shows that the plaintiff and defendant accidentally met at a restaurant or refreshment saloon, not on business, but accidentally, to procure refreshment. Several others were present, and the defendant being an extensive coal dealer, the conversation turned on the price of coal, and eventually the price at which it could be delivered per bushel at Cincinnati. The defendant alleged he could deliver it there at the price it was selling at Pittsburgh, at sixteen cents per bushel. The plaintiff,—the witness McKee thought,—bantered him about delivering coal there to him at that price, but the defendant said he could and would. Finney said he would take 100,000 bushels, and called for pen, ink and paper to write a contract. Brown said the barges to be used in transporting the coal were to be returned in good order, reasonable wear and tear excepted, and he must have $10 a day for each after a proper time had elapsed for the plaintiff to unload and return them. He further said the coal must be cash. The plaintiff said, "Certainly," and commenced writing a check, one of the plaintiff's party handing him a stamp. Brown then remarked, "Never mind that, I'll have the papers drawn up to-morrow." The matter proceeded no further then, but on the next day or next but one, the plaintiff with one or two of those who were of his party at the saloon, called on the defendant to consummate the writings, but disputes arising, the contract was never put in writing, and the plaintiff not long thereafter sued on the contract as complete at the first interview, and recovered $2000 damages.

After affirming, in general terms, the 1st point, the learned judge qualified the assent by saying, "but if it is intended by the proposition, that when a contract or agreement is made on terms proposed at the time, but the adjustment of these terms in the contract and reducing them to writing is postponed till the next day and then neglected or refused to be done by either party, that in such a case the contract is not binding, I would answer in the negative."

This was calculated to mislead the jury. It assumed the con-

[Brown *v.* Finney.]

tract to be complete all but putting it in writing; the terms all agreed upon, needing only to be adjusted in the writing; in such case the learned judge was of opinion the contract would be good notwithstanding no writing was ever entered into or intended. Doubtless it would, but that was not a settled point by any means in the case in hand. Whether all the terms were agreed upon necessary to such a contract was the question, and to describe a case not before the court and of a different character, was either to induce the jury to suppose the case on trial was like it and the law of it was to govern, or to render the instruction incomprehensible to them. But the next sentence more clearly explicates the objectionable character of these qualifications. "To allow," says the judge, "the non-reduction to writing or non-arrangement of the terms of a contract, *after it was entered into, to work its rescission,* they should be made part of its terms at the time it was made, conditioned not to be binding unless these things were done. The arrangement of the terms which have been once agreed to is not essential unless made so. A contract entered into with the *proviso* when reduced to writing, and the arrangement of the terms thereafter agreed on, would not be perfect or binding until the arrangement was made and written, but a contract and its terms agreed on and their adjustment postponed to another time, and one of the parties afterwards refusing to assent to any adjustment, he would not be relieved because such was not made a condition of his being bound when the contract was made." This is all predicated of a contract complete in all its parts except adjusting its terms, a thing I do not quite comprehend. In such a case a proviso that it should not be binding unless reduced to writing, might, as the learned judge remarked, be necessary in order to prevent it being binding. Obviously, this would not be necessary where the contract was not complete, and this was the plaintiff's theory as contained in the point. But the jury would scarcely fail to understand the court in instructing them that the contract was complete, and for want of a proviso or reservation that it should not be binding it would be, and as there was no such reservation or promise proved, it was therefore to be held by them to be a contract complete and entire.

In substance the same thing is repeated in the answer to the 2d point—"Either party," said the learned judge, "in making a contract, can make it conditional or dependent on being reduced to writing before becoming binding upon him, so that he may see its terms in a definite shape; but this must be a condition or one of the conditions of the contract itself or reservation on his part on entering into it." Here again is a complete contract assumed, and the necessity for a reservation or condition to prevent it being binding as a contract. This assumes the question at issue by requiring reservations and conditions to prevent the contract

[Brown *v.* Finney.]

going into effect, which without them would be complete. But this would not be necessary where the terms of the contract were not all agreed upon.. Such reservations or conditions would be out of place then. Whether a contract had been completed in the case in hand was the essential question of the case, and when instructions were given based upon an assumed complete contract the jury were, doubtless, misled. It needs no reservations or provisoes in a case where all the essential terms are not agreed upon but postponed to another time, for the assent of the contracting minds is wanting. To ascertain how this was, was the main contest, and the defendants put their proposition to the court predicated on the belief that the contract was not completed at the saloon, but postponed until writings were prepared; but to the instruction assenting to the proposition, are added principles foreign to it, that is to say, the necessity of a reservation or proviso to prevent it being binding. I think there should have been a clear affirmative answer to these points upon the theory of the defendants. The transaction looks like what McKee thought it was, a bantering proposition by the plaintiff to the defendant, and wanting the intention to contract. There was certainly testimony on this point—the time, place and circumstances tended to show it, and it should have been clearly put to the jury to say whether, under the testimony, there was a contract or not. It is not every loose conversation that is to be turned into a contract, although the parties may seem to agree. A man is not to be snapped up for an unintended proposition made when he has no reason to suppose anybody wants to accept what he proposes. When people meet to do business they are presumed to mean what they propose, and expect to be taken up; but a proposition made and accepted where no expectation of contracting exists, should be carefully weighed with all the circumstances when the question of assent at the time comes to be questioned, as here. We do not intend to intimate any opinion on the merits of this controversy, but for the reasons given we think it ought to go to another jury. We see nothing else in the case which calls for notice or correction.

Judgment reversed, and a *venire de novo* awarded.