### WILLIAM B. LEE *vs.* PRESCOTT H. BUTLER, administrator.

Berkshire. October 1, 1896. — January 12, 1897.

Present: FIELD, C. J., ALLEN, HOLMES, KNOWLTON, MORTON, LATHROP, & BARKER, JJ.

*Guaranty — Memorandum — Statute of Frauds — Alteration of Instrument by Promisee after Delivery — Effect of Change in Form of Collateral Security.*

While A. and B. were negotiating in regard to the making of a loan by A. to a corporation, B. wrote to A. as follows: "The security offered for the temporary loan . . . consists of the bonds of the company to the amount of . . . I am willing to make myself responsible for the payment of principal and interest as you request it. . . . I enclose mem. to the effect above mentioned." The memorandum so enclosed was as follows, and was signed by B.: "If your principal," naming it, "and interest at 10 per cent is not paid as stipulated, I hereby make myself responsible for its payment." A. afterwards made the loan of a certain sum, upon a contract to repay him the money with a bonus of twenty per cent and interest at ten per cent, for which the following receipt, signed by B., was given: "Received of A. the sum of . . . for investment according to arrangement." Seven years later a letter from A. to B. stated that the stipulation was to pay the interest half-yearly and the principal at a time then passed, and that the sum included the bonus as well as the money loaned. In B.'s reply to the letter he said, "I accept your proposal without hesitation." *Held,* that there was a sufficient memorandum in writing, within the statute of frauds, Pub. Sts. c. 78, § 1, to make the contract of guaranty binding.

An alteration of the sum named in a memorandum as the principal, the payment of which with interest is guaranteed, which is not an absolutely immaterial one, but which is made in good faith by the promisee, after delivery, with a view to correct an error and to carry out the intention of the guarantor, will not deprive the promisee of his right to rely upon the memorandum to prove the original contract.

If A. lends money to a corporation, and takes as collateral security for its payment
bonds of the corporation, the whole issue of which is secured by a mortgage of
land, and also takes a contract of guaranty from B., a subsequent foreclosure of
the mortgage for the benefit of the bondholders does not affect A.'s right to
enforce the guaranty.

APPEAL, under Pub. Sts. c. 137, § 11, from the decision of
commissioners appointed by the Probate Court to examine
claims against the insolvent estate of John Swann, deceased.
Hearing in this court, before *Knowlton*, J., who reserved the
case for the consideration of the full court; such judgment to
be entered as law and justice might require.   The facts appear
in the opinion.

The case was argued at the bar in October, 1896, and after-
wards was submitted on briefs to all the judges.

*E. M. Wood & W. F. Hawkins*, for the claimant.

*C. E. Burke*, (*P. H. Butler* of New York with him,) for the
respondent.

KNOWLTON, J.   The claim is founded on a contract of guar-
anty, the principal memorandum of which is in these words:

<blockquote>
"5 Fredericks Place, Old Jewry, E. C.

London, 18 March, 1873.

6,000
</blockquote>

" Dear Lee, — If your principal, £8,000, & interest at 10 per
cent is not paid as stipulated, I hereby make myself responsible
for its payment.

<blockquote>
" Yours sincerely, ·
</blockquote>

" W. B. Lee, Esqre.                    John Swann."

This paper was enclosed in a letter as follows:

<blockquote>
"5 Fredericks Place, Old Jewry, E. C.

London, 18 March, 1873.
</blockquote>

" Dear Lee, — The security offered for the temporary loan to
the Phœnix Company consists of the bonds of the company to
the amount of £100,000.   As the price paid by the company
for the property involved is $1,000,000, this speaks for itself.   I
propose to go to New York myself, and I shall, of course, decline
to hand over the money unless satisfied that the bonds are right
and sound.   If the whole issue of bonds are delivered to the
lender he becomes first mortgagee upon a freehold property
worth fifty times the amount of the advance.   I am willing to

make myself responsible for the payment of principal and interest as you request it. It is not my rule, and I should strongly object to do it, if I thought there was a shadow of a risk. I am, however, quite satisfied to make myself so responsible, as I should not only be able to sell bonds at once to the amount of your advance, but should have the whole property of the company to fall back on. I am personally acquainted with the land and know its value.

" Yours sincerely,

" W. B. Lee.                                                    John Swann.

" P. S.   I enclose mem. to the effect above mentioned."

It appears by the testimony that when these papers were sent to the claimant, he and the defendant's intestate were negotiating in regard to the making of a loan by the claimant to the Phœnix Iron and Coal Company, to be secured by bonds of the corporation, and upon which he was to be paid interest at the rate of ten per cent, and also a bonus of twenty per cent of the principal; and that a loan of £4,500 was soon after made, for which a receipt was given in these words:

" London, 30th April, '73.

" Received of W. B. Lee, Esq. the sum of four thousand & five hundred pounds (£4,500) for investment according to arrangement.

" £4,500. 0. 0.                                    John Swann.   [Stamp.] "

There is no doubt under the authorities that the letter and receipt, as well as the paper containing the promise, may be used to complete the memorandum in writing required by the statute of frauds to make such a contract binding. *Owen* v. *Thomas,* 3 Myl. & K. 353. *Jackson* v. *Lowe,* 1 Bing. 9. *Barkworth* v. *Young,* 26 L. J. (N. S.) Ch. 153. *Bailey* v. *Sweeting,* 9 C. B. (N. S.) 843. *Wilkinson* v. *Evans,* 35 L. J. (N. S.) C. P. 224. *Oliver* v. *Hunting,* 44 Ch. D. 205, and cases cited. *Dobell* v. *Hutchinson,* 3 Ad. & El. 355. *Ridgway* v. *Wharton,* 6 H. L. Cas. 238. *Colbourn* v. *Dawson,* 20 L. J. (N. S.) C. P. 154. It is also well settled that parol evidence may be introduced to show the situation of the parties and the circumstances attendant upon the transaction for the purpose of applying the contract to the subject matter, and of showing the connection of different writings constituting the memorandum with one an-

other. _New England Dressed Meat & Wool Co._ v. _Standard Worsted Co._ 165 Mass. 328, 332. _Sullivan_ v. _Arcand_, 165 Mass. 364. _Freeland_ v. _Ritz_, 154 Mass. 257. _Shortrede_ v. _Cheek_, 1 Ad. & El. 57. _Bateman_ v. _Phillips_, 15 East, 272. _Macdonald_ v. _Longbottom_, 1 El. & El. 987.

Applying these doctrines to the facts of the case, we have a contract of guaranty properly proved by a memorandum in writing sufficient in every detail, unless it be in regard to the meaning of the words "as stipulated," and in regard to the question whether the principal includes or excludes the bonus of twenty per cent in addition to the amount furnished by the claimant. There is very strong ground for the plaintiff's contention that the parol evidence of the contract between the claimant and the Phœnix Iron and Coal Company, in regard to the loan then contemplated and subsequently made, is competent to establish the meaning of these particulars of the memorandum of guaranty. But even if that were not so, we find a memorandum signed by Swann seven years later, in the form of a letter written in reply to the claimant's letter of April 16, 1880, which amounts to an acknowledgment that the stipulation was to pay the interest half-yearly, and the principal in September, 1875, and that the principal included the bonus as well as the money actually advanced. These particulars were plainly stated in the letter of the claimant. In Swann's letter in reply he said : " I accept your proposal without hesitation. I can only say that I am not insensible to the tone and spirit of your letter." This must be taken as an admission that the contract was as stated. Under the authorities cited above, these letters, although written long afterward, may be used to establish the terms of the contract; and we are confirmed in our construction of them by the fact found in the report, that Swann " recognized his obligation to the claimant under the guaranty during the last years of his life, and never denied it."

The next question is whether the claimant has forfeited his right to recover by making an alteration in the writing.* The

---

* The report stated that, when the guaranty was received by the claimant, the sum written in it was £8,000; that, at some time, he crossed out those figures and inserted £6,000 ; and that he testified as follows : " I altered the sum named in the guaranty from £8,000 to £6,000, as it seemed to me

figures 8,000, which he changed to 6,000, were material as a part
of the description of the " principal," whose payment was guar-
anteed.   The subject matter of the promise is the principal and
interest at ten per cent, which the Phœnix Company promised
to pay to the claimant in consideration of his loan.   The figures
which were inserted by way of description were not essential to
the validity of the contract.   They were wrong, and they could
not be helpful to either party in applying the writing to the sub-
ject matter of the contract.   But being intended as a part of the
description, they were not absolutely immaterial.   If they had
been correct, they would have been relied upon as an important
part of the memorandum.   Whatever their approximation to
accuracy, they might be considered in connection with the other
evidence in determining the meaning and application of the
memorandum.   We cannot treat this as a case of an absolutely
immaterial alteration, although the legal effect of the memoran-
dum, in its application to the facts proved, is the same in its
original as in its altered form.   Both before and after the alter-
ation, this part of the description of the subject of the promise
was erroneous, and while six thousand pounds was more nearly
correct than eight thousand pounds as a statement of the amount
of the principal, the difference is not probably of much practi-
cal importance.   But treating it as not absolutely immaterial,
we think that such an alteration, made in good faith, with a view
to correct an error in a memorandum of this kind, does not de-
prive the party of his right to rely upon the memorandum to
prove the original contract.

It is a general rule of law that a material alteration of an
executory contract in writing, made by the promisee after its de-
livery, deprives him of his right to enforce it.   *Boston* v. *Benson,*
12 Cush. 61.   *Fay* v. *Smith,* 1 Allen, 477.   *Wade* v. *Withington,*
1 Allen, 561.   *Commonwealth* v. *Emigrant Industrial Savings
Bank,* 98 Mass. 12.   *Draper* v. *Wood,* 112 Mass. 315.   *Osgood* v.
*Stevenson,* 143 Mass. 399.   Two reasons are given for the rule:
first, that the identity of the contract is destroyed by the altera-
tion ; and secondly, that no man shall be permitted, on grounds of

that Mr. Swann had made a mistake.   I think I must have included Mr.
Bayley's £500. which of course was a mistake on my part.   The sum should
be £5,400, as shown already, being the money actually advanced with bonus."

public policy, to take the chance of committing a fraud without running any risk of loss by the event when it is detected. But the rule is not applied in this Commonwealth to a writing of this kind, where the alteration is made in good faith to correct an error, under circumstances showing an implied authority from the other party to make the correction. The principle underlying this exception to the general rule seems to be, that where no one's rights are injuriously affected, and where it appears that the alteration was made with a view to carry out the intention of the party who signed the paper, the change ought not to render the contract invalid. *Smith* v. *Dunham*, 8 Pick. 246. *Adams* v. *Frye*, 3 Met. 103. See also *Bluck* v. *Gompertz*, 7 Exch. 862; *Byrom* v. *Thompson*, 11 Ad. & El. 31; *Waugh* v. *Bussell*, 5 Taunt. 707; *Brutt* v. *Picard*, Ry. & Mood. 37; *Cruchley* v. *Clarance*, 2 M. & S. 90; *Wake* v. *Harrop*, 6 H. & N. 78; *Hervey* v. *Harvey*, 15 Maine, 357; *Horst* v. *Wagner*, 43 Iowa, 373. In *Adams* v. *Frye*, *ubi supra*, where the alteration was by procuring one who knew the signature of the obligor in a bond to affix his own signature thereto as an attesting witness, although he was not present when the bond was signed, the alteration was treated as not absolutely immaterial, inasmuch as the attestation changed the method of proving the instrument, and it was held that the circumstances of the alteration were *prima facie* evidence of a fraudulent intent on the part of the obligee, but that the inference of fraud might be rebutted by proof, and that if the change was made without a fraudulent purpose it would not invalidate the contract. The change in the writing before us is not more important than that in the bond in *Adams* v. *Frye.* The paper is not a formal contract, but it was intended as a mere memorandum. The figures originally inserted in it were not necessary to give it effect, and were in contradiction of the other evidence. The contract actually existing between the parties was not changed by the change in the figures. The memorandum, with the other competent evidence, proved the same contract after the change as before it. The writing, as a piece of evidence, was changed in a part of the description of the subject matter, but it was only one of several papers necessary to constitute the memorandum required by the statute of frauds. Applying to this case the rule applied in *Adams* v. *Frye*, it is a question of

fact whether the change was made in good faith or not.   Bad faith is not to be presumed, and we do not find in this case, as was found in *Adams* v. *Frye*, such circumstances as show *prima facie* a fraudulent intent on the part of the claimant.   There was a manifest error in the statement of the amount of the loan. The testimony is that the change was made with a view to correct the mistake, and that in some way a mistake was made in making the correction.   The report discloses no such improbability in this testimony as to deprive it of credibility, and no such facts of any kind as to overcome the presumption of honesty, on which the claimant has a right to rely.   *Ely* v. *Ely*, 6 Gray, 439.

The principal referred to in the memorandum is the forty-five hundred pounds advanced, with the nine hundred pounds bonus, making fifty-four hundred pounds in all on which interest was to be paid, according to the agreement.   This appears by the language of the report, and by the letters marked B, D, and E, which are annexed.

It is contended that the foreclosure proceedings in Georgia * have deprived the claimant of his right under the guaranty, and *Lockhart* v. *Hardy*, 9 Beav. 349, and *Kinnaird* v. *Trollope*, 39 Ch. D. 636, are relied on by the administrator.   But the facts of the present case call for the application of a different rule. The plaintiff advanced money upon a contract to repay him the money with a bonus of twenty per cent, making fifty-four hundred pounds in all, with interest at ten per cent.   For the performance of this contract he took collateral security in the form of bonds secured by mortgage to the amount of twenty thousand

---

* The Phœnix Iron and Coal Company was a corporation established under the laws of Georgia, and the bonds issued by the corporation were secured by a mortgage of real estate in that State.   The intestate, Swann, who was the mortgagee in trust for the bondholders, proceeded, in 1884, at their request, to foreclose the mortgage, and, under an order of court, sold the property to himself for $5,000, and held the title in his own name until his death; but he was in fact acting for the bondholders in these proceedings.   At the time of the loan to the claimant these bonds, to the amount of £20,000, were pledged, not only to secure payment of the claimant's loan with the bonus and interest, but also as security for a loan of £500 made at the same time and on similar terms by one Bayley, a friend of the claimant. The claimant allowed these bonds to remain in the hands of Swann as his agent, in whom he had great confidence.

pounds. These bonds were part of an issue of one hundred thousand pounds secured by the same mortgage. He also took a contract of guaranty from Swann. In pursuance of the power of sale contained in the mortgage, the form of his collateral security was changed by a foreclosure for the benefit of all the bondholders. This foreclosure was conducted by Swann himself, who was one of the mortgagees, as trustee. It was understood by him that all he did was without prejudice to the claimant's rights under the contract of guaranty. But without reference to his understanding, a mere change in the form of the collateral security, under a power which went with the security as part of it, has no effect upon the debt secured by the collateral. The claimant still holds the corporation's contract for the payment of fifty-four hundred pounds and interest, and the trustees have availed themselves of their right to dispose of the real estate in Georgia as a security going with the bonds. The bonds were never evidence of the principal debt from the corporation to the claimant, but were held by him subject to a right of redemption on the payment of fifty-four hundred pounds and interest. The claimant's interest in the real estate since the foreclosure is held subject to the same right. The debt which Swann guaranteed was not the mortgage debt, nor any part of it, and it still remains unpaid. The continued holding by the claimant of the security, whether in its original form or its changed form, does not affect his right to proceed against the defendant on the guaranty. *Lincoln* v. *Bassett,* 23 Pick. 154. *Taylor* v. *Cheever,* 6 Gray, 146. *Rogers* v. *Ward,* 8 Allen, 387. *Tucker* v. *McDonald,* 105 Mass. 423. If the respondent pays the principal debt, he will be subrogated to the rights of the claimant to the collateral security.

*Judgment for the claimant for the larger sum.*