E. C. LYNN, Appellee, v. L. E. RICHARDSON, Appellant.

Contracts: HOW MADE: PAROL EVIDENCE. A contract may be made by correspondence, and except for the statute of frauds may be partly in writing and partly oral; but parol evidence is inadmissible to complete or vary an insufficient writing, although the surrounding circumstances or facts from which the relation of several writings may be inferred can be orally shown.

Same: PRELIMINARY NEGOTIATIONS: WHEN CONTRACT IS CÓMPLETE: EVIDENCE. As a general rule where the parties intend that their correspondence or oral negotiations are but steps leading up to the making of a contract there is no completed contract until final consummation of their negotiations in a formal written agreement.

In this action for breach of an alleged contract by correspondence, for the sale of a dental business, the evidence is held to require a submission of the question of whether there was a completed agreement.

*Appeal from Linn District Court.*—HON. MILO P. SMITH,
Judge.

TUESDAY, MAY 9, 1911.

'ACTION to recover damages for an alleged breach of a
contract of sale. Defendant denied that there was any con-
tract, and pleaded some other issues not necessary to be
noted at this time. Trial to a jury, verdict and judgment
for plaintiff, and defendant appeals. *Reversed.*

*L. M. Kratz,* for appellant.

*Cook & Tourtellot,* for appellee.

DEEMER, J.—The parties are each dentists, and, before
the happening of the matters in controversy, defendant was
engaged in the practice of his profession at Cedar Rapids,
Iowa, and plaintiff was likewise engaged at the town of
Dysart, in this state. In the early part of November of the
year 1909, defendant concluded to dispose of his business,
and in some manner learned that plaintiff was a prospective
purchaser. Various letters and telegrams passed between
the parties, and on November 9, 1909, plaintiff went to
Cedar Rapids and looked over defendant's office and busi-
ness. Thereupon he, plaintiff, made defendant an oral offer
for his business, but, as they could not agree upon either
price or terms, no contract resulted. Plaintiff then returned
to his home, and on the 16th of November he wrote de-
fendant the following letter:

Dysart, Iowa, November 16th, 1909. Dr. L. E. Rich-
ardson, Cedar Rapids, Iowa—Dear Doctor: Your letter
of the 15th here. As to your residence, I would rather
not buy for a year or so, until I had got acquainted with
the city, and saw how business was. As to my offer, I
will change that offer to one thousand, and you leave

everything as it is—not take out your chair or cabinet, and leave the hand instruments. Of course, anything your grandfather had you could take. I have been thinking of your prices and the amount of business you do, and know if a man goes in there he will have to lower them some and even then lose a good many of your patients that come to you just because it is you. As far as money is concerned, I make more clear money here in a year than you do there, and the only object in me moving would be to live in a large town, and if it wasn't for my wife wanting to go, I would rather live here. But if you want a thousand dollars and leave everything as it is, let me know at once, as time is short. Respectfully, E. C. Lynn.

To this defendant made the following response:

Cedar Rapids, Iowa, November 30th, 1909. Dr. E. C. Lynn, Dysart, Iowa—Dear Doctor: In reply to your letter of a few days since, will state that I have been so tangled up with a couple of house deals that I was unable to tell just what I could do until now. I think now that I can accept your offer of the One Thousand and leave everything as you suggest, although it is very unusual for one to be asked to leave their small instruments as every student is supposed to have those. However, I can easily purchase more if I ever need them and you can make a list of them if you care to do so. It would suit me just as well to make the time January 15th, as January 1st, and that would give you more time there. Please let me know promptly when you will be here to close the deal, or if you prefer to do it by writing, we can arrange that. Yours truly, L. E. Richardson. P. S. Have seen the Kimball Bldg. people and you can lease for two or more years to suit you.

Instead of answering this letter, plaintiff went to Cedar Rapids on December 2, called at defendant's office, and said he had come to fix up the sale; that he would pay $100 down, and the balance when he took possession; that he wanted defendant to remain in possession until February 1, and sign a contract that he would not practice dentistry

in the city of Cedar Rapids for the period of five years; that he wanted the contract to contain these as well as other conditions.   Defendant testified that he refused to assent to these conditions, but, as plaintiff insisted upon them, he considered the matter for some days, and then notified plaintiff that the deal was off.   In the meantime, however, plaintiff on December 7 notified the defendant that he had sold his office at Dysart, and would be able to relieve defendant by January 10.   He also stated in this letter of notification that he had not received the papers, and he requested defendant to send them, and also to state how he was getting along about renting the rooms.   On December 8 defendant wrote plaintiff a letter, from which we extract the following:

We find that it will be practically impossible for us to move away during the winter, and I have decided to keep my office until spring, anyway.   As I understood the matter the other day when you were here, the final decision was to go over for a few days until I could see this physician about the office and think over the new requirements that you wanted me·to sign.   At present I do not think I would sign a contract to stay out of practice here for any length of time, for while I never expect to come here again, a man never knows what he might want to do, and I do not care to mortgage my future.   I am sorry if this has caused you any inconvenience, and trust that you can call off your deal if you care to do so.   My intentions were good, but the conditions that you have imposed and the conditions here make it impossible to accept.   If you care to open a new office here, I will do all I can to help you, and would think that if you pushed Sonnoform as a specialty you might do well.   I failed to sell my place and the physician failed to take the office, as his apparatus was too large.   I do not know whether my office will be for sale in the spring or not.   Sincerely yours, L. E. Richardson.

This was followed by another letter dated December 16 as follows:

Cedar Rapids, Iowa, Dec. 16th, 1909. Dr. E. C. Lynn, Dysart, Iowa.—Dear Doctor: After rejecting your revised offer the other day, I closed a deal with another purchaser, as I do not understand that you had any claim upon me. I am very sorry if this has caused you any trouble, but do not see wherein I am to blame, as I had a perfect right to accept or reject any proposition named. Sincerely hoping that this has caused you no serious loss, I remain, Yours truly, L. E. Richardson.

No earnest money or other consideration save mutual promises passed between the parties, and, in order for plaintiff to recover, he must show a contract in writing which under our statute imports a consideration. This he claims to have done. His insistence is that the letters we have quoted, taken in connection with permissible extrinsic testimony, show a written contract, for the breach of which defendant is liable in damages.

It is true, of course, that a contract may be made by correspondence, and that but for the statute of frauds a contract may be partly oral and partly in writing. But parol testimony is inadmissible to complete or vary an insufficient writing. *Morris v. Peckham,* 51 Conn. 128; *First Church v. Swanson,* 100 Ill. App. 39; *Brauer v. Oceanic Co.,* 178 N. Y. 339 (70 N. E. 863). However, this rule does not go so far as to reject testimony of the surrounding circumstances or facts from which the relation of the several writings may be inferred. *Beckwith v. Talbott,* 95 U. S. 289 (24 L. Ed. 496); *Lee v. Butter,* 167 Mass. 426 (46 N. E. 52, 57 Am. St. Rep. 466). But the rule is practically universal that the writings must contain all that is necessary to form a contract, and that defects and omissions therein can not be supplied by verbal testimony. *Breckinridge v. Crocker,* 78 Cal. 529 (21 Pac. 179); *McElroy v. Buck,* 35 Mich. 434; *American Oak Leather Co. v. Porter,* 94 Iowa, 117; *Watt v. Cranberry Co.,* 63 Iowa, 730.

1. Contracts: how made: parol evidence.

The trial court instructed squarely that the letters

we have quoted, taken in connection with some earlier ones, constituted a contract of sale covering defendant's dental business, including instruments, furniture, office, and location, supplies, and the good will of his business. In this there was manifest error. Not only the correspondence, but the acts of the parties, show that their minds never met upon either the subject matter or the price and terms of agreement. They never progressed any further than to agree upon some general terms, and their letters and other conduct indicate that all they did by correspondence was to agree to meet to settle upon terms or to close the matter by further correspondence.

2. SAME: preliminary negotiations: when contract is complete: evidence.

Generally speaking, if the parties intend their correspondence or oral negotiations as but steps leading up to a binding contract, no contract is made until the final consummation of the negotiations through the execution of the formal written agreement. *Spinney v. Downing,* 108 Cal. 666 (41 Pac. 797); *Weitz v. Ind. Dist.,* 79 Iowa, 423; *Works v. Bristol Co.,* 170 Mass. 528 (49 N. E. 918); *Wood v. Edwards,* 19 Johns. (N. Y.) 205; *Congdon v. Darcy,* 46 Vt. 478. In the *Weitz* case, *supra,* it was said:

The defendant ought to have been permitted to plead as a defense that it was the understanding of the parties that a written contract should be entered into. If that was an agreement, surely no contract existed for building the house, unless the written instrument had been executed. It may be that the acceptance of the bid, had there been no statute requiring a contract to be made with the lowest responsible bidder, would have raised an agreement to enter into a contract. But this action is not upon such an agreement. It is on the contract to build the house, which, if there was an agreement that it should be reduced to writing, was in fact never entered into. See *Commissioners v. Brown,* 32 N. J. Law, 504; *Morrill v. Mining Co.,* 10 Nev. 125; *Fredricks v. Fasnacht,* 30 La. Ann. 117; *Avendano v. Arthur,* 30 La. Ann. 316; *Congdon v. Darcy,* 46 Vt. 478; *Eads v. City of Carondelet,* 42 Mo.

113; *Paige v. Woolen Co.,* 27 Vt. 485. These constructions lead us to the conclusion that the district court erred in striking the amended answer, in excluding the evidence above referred to, and in giving the instruction quoted above.

See, as further sustaining these views, *Cotton v. Life Ins. Co.,* 115 Iowa, 729; *Baker v. Johnson Co.,* 37 Iowa, 186; *Brown v. Finney,* 53 Pa. 373; *Clay v. Ricketts,* 66 Iowa, 362. The best that can be said of appellee's case is that it was a question of fact for a jury as announced in *Herring v. Insurance Co.,* 123 Iowa, 533; *Nash v. Kreling,* 56 Pac. 262,[1] and other like cases. But this is a doubtful proposition, upon which we make no pronouncement at this time. It is enough to say that the trial court erred in instructing as a matter of law that the correspondence which passed between the parties constituted a valid and enforceable contract.

Some complaint is made of the instructions with reference to the measure of damages. One of them is faulty; but the disposition of the case renders it unnecessary that we point out the exact defect.

For the error pointed out, the judgment must be, and it is, *reversed.*