## MIDLAND STEEL SALES CO. v. WATERLOO GASOLINE ENGINE CO.

(Circuit Court of Appeals, Eighth Circuit.
· November 10, 1925.)

No. 6850.

**1. Contracts ⬤═346(1)—Where one of two writings constituting alleged contract was inadmissible, contract is not proved as pleaded.**

In· action based on contract alleged to consist of two writings, one of which could only be' shown to be part by proof of oral contract, the contract is not proved as pleaded under rule that proof must correspond to allegations.

**2. Frauds, statute of ⬤═118(1)—List of merchandise sent in response to request by seller held inadmissible to complete contract under statute.**

Where alleged contract was to sell surplus stock of merchandise, to be subsequently listed, a list subsequently sent merely as information in response to request by seller is inadmissible to complete contract, under Code Iowa 1897, § 4625, where such list could only be made part of contract by proof of distinct oral contract; no connection appearing between the two papers, either by comparison or surrounding circumstances of parties.

**3. Courts ⬤═366(1)—Construction of statute of frauds by highest court of state held controlling on Circuit Court of Appeals.**

Construction of statute of frauds (Code· Iowa 1897, § 4625) by highest court of state, to the effect that parol evidence is not admissible to complete or vary an insufficient writing,' is controlling on Circuit Court of Appeals.

**4. Evidence ⬤═450(8)—Contract held not so ambiguous as to permit parol evidence to show list of merchandise subsequently prepared to be part of contract.**

A writing wherein buyer agreed to purchase all of manufacturer's surplus stock, quantities to be as specified on list to be furnished by seller, is not so ambiguous as to' permit introduction of parol evidence to show that list subsequently prepared was regarded as a statement of surplus sold, and hence part of contract.

**5. Evidence ⬤═450(8)—Statement in contract that quantities specified were approximate and subject to count held not to make it ambiguous.**

In contract for purchase of defendant's surplus stock, quantity to be specified by a future list to be furnished by defendant, statement, "quantities specified being approximate and subject to count," does not make the alleged contract ambiguous, so as to admit introduction of parol evidence to explain it, as it does not refer to quantities then specified.

**6. Contracts ⬤═10(4)—Evidence held to show that amount of merchandise furnished was to be, determined at will of. seller, and hence lacking mutuality.**

In contract for sale of personalty, evidence *held* to show that quantity to be delivered buyer was to be determined by will, want, or wish of seller; making contract unenforceable because of lack of mutuality.

In Error to the District Court of the United States for the Northern District of Iowa; George C. Scott, Judge.

Action by the Midland Steel Sales Company against the Waterloo Gasoline Engine Company. From a judgment on directed verdict for defendant, plaintiff brings error. Affirmed.

Alfred Longley, of Waterloo, Iowa (Charles E. Ransier, of Waterloo, Iowa, on the brief), for plaintiff in error.

George E. Pike and Carleton Sias, both of Waterloo, Iowa, for defendant in error.

Before SANBORN, LEWIS, and KENYON, Circuit Judges.

KENYON, Circuit Judge. Parties will be designated as in the trial court. Plaintiff brought action in the District Court of the United States for the Northern District of Iowa, seeking damages for breach of a certain written contract, alleged to be entered into on or about the 8th day of September, 1921, for the sale by defendant to it, of a quantity of steel sheets and bars. The complaint alleged that the contract consisted of two parts, viz. the writing of September 8, 1921, attached to the petition as Exhibit A, and a list of steel material attached to the petition as Exhibit B. These two exhibits are in the record, identified in the evidence as Exhibits D and C to C-3 inclusive, and will be hereinafter referred to as Exhibits D and C. Damages were demanded in the sum of $75,-000. Defendant answered that the alleged contract was a mere proposal or offer to purchase, incomplete, uncertain, without mutuality, and that the minds of the parties never met as to the subject-matter, and therefore no enforceable contract was in fact made.

At the close of plaintiff's case, the court, upon motion, directed a verdict for defendant, holding that the testimony conclusively showed that the alleged contract was never consummated; that, while the parties agreed upon the basis thereof and reduced it to writing, the particular items of stock or the amount of stock was not agreed upon, but was left for future listing and determination;

and that the attempt on the part of plaintiff to show by parol testimony that the surplus referred to in the contract, Exhibit D was to be substantially as set forth in the contract, Exhibit C, violated the statute of frauds. Plaintiff brings the case here on writ of error.

Exhibit D, which is the nub of the controversy, is as follows:

"Waterloo, Iowa, September 8, 1921.

"Waterloo Gasoline Engine Co., Waterloo, Iowa—Gentlemen: As per conversation, we agree to purchase from you all your surplus stock of cold rolled steel, mild steel bars, angles and sheet steel. Quantities as specified on list you are to furnish, quantities specified being approximate and subject to count, and weight as found at the time of loading. Price to be $1.25 per cwt., f. o. b. Waterloo.

"It is understood that we are not to take any material which is pitted, or so badly rusted as to be in uncommercial condition. It is also understood that we will take additional quantities not included in your list, which are in good condition and commercial sizes, and which you may wish to dispose of at the time of shipment. The above flat price covers all of the items.

"The terms of payment are sight draft against bill of lading, drawn on us at Chicago. Shipment to begin as soon as convenient during the month of September, 1921, and to be completed as quickly as possible.

"Yours truly,
"Midland Steel Sales Co.,
"By A. E. Rosenthal.
"Accepted:
"Waterloo Gasoline Engine Co.,
"By E. W. Bichler,
"Purchasing Agent."

Exhibit C is a list of steel material which was sent by defendant to plaintiff on the 30th day of August, 1921, in answer to a letter from plaintiff of August 25, 1921. The letter of August 30, 1921, is as follows:

Plaintiff's Exhibit B.

"Waterloo Gasoline Engine Company. Gasoline Engines. Traction Engines.

"Waterloo, Iowa, August 30, 1921.

"Midland Steel Sales Co., 25 East Jackson Blvd., Chicago, Ill.—Gentlemen: As requested in your letter of August 25th, we are sending you herewith list of bars, sheets, etc., that we have for disposal.

"Yours truly,
"Waterloo Gasoline Engine Co.,
"JCH        E. W. Bichler, Pur. Agt.
"Dictated by E. W. Bichler."

Subsequent to September 8, 1921, the date of Exhibit D, other correspondence passed between the parties, some of which is important as bearing on the intention and purpose of the contractors.

[1, 2] It is to be noted that the action is based on an alleged contract in writing, consisting of Exhibits D and C. It is elementary law that in every case the proof must correspond with the allegations of the petition, and, as said by the Supreme Court of Iowa in Heim et al. v. Ressel et al., 162 Iowa, 75, 81, 143 N. W. 823, 826, "the relief must be predicated thereon, and not upon some other theory, either concealed or omitted." The only evidence in the case was that introduced by plaintiff, and it shows that Exhibit C was not furnished as a part of the alleged contract or delivered as such at the time of signing Exhibit D. It was sent through the mails prior to September 8, 1921, merely as information in response to the letter of plaintiff of August 25, 1921. There is no reference in either exhibit to the other; nothing in the exhibits themselves shows that either bears any relationship to the other. It is without dispute that it was agreed a new list of material was to be prepared after the signing of Exhibit D. There may be dispute as to the purpose of the list—whether it was to show the material that defendant was willing to sell, or was a mere correction of something else, but nevertheless a new list was to be made up. One witness testified the reason the list was not then made was that the list which would show the surplus for sale depended upon the future arrangements of the defendant in its factory. Mr. Bichler, who was connected with defendant company, but was a witness for plaintiff, testified that at the time of signing Exhibit D defendant company was unable to say what material it had for disposal, due to the fact that it had not determined its production program. Another witness testified that Exhibit C covered the surplus, with some changes and corrections, that was intended to be sold under Exhibit D. The court permitted this testimony to be introduced, but in sustaining the motion to direct a verdict held that such testimony violated the Iowa statute of frauds, saying:

"It is perfectly clear that if the plaintiff is permitted to prove this contract by parol testimony—that is, to show what was sold—then the statute of frauds would give no protection to the defendant in such cases. This case differs from a case where the mere quantity of a definite thing is to be identified. It differs from a case where the particular de-

scription, such as land, coal, gasoline, or grain, is to be identified. Here the question of what is surplus stock is a matter which depends upon the volition of the defendant, and did so depend at the time Exhibit A was signed. What was the surplus to the defendant might not have been surplus, if it had been owned by another. What was considered surplus by the defendant in August might not have been considered surplus in September, under a change of plans. So that it seems to me that, in the light of the undisputed testimony here, if this contract now claimed by the plaintiff is to stand, it must stand alone on the verbal testimony of witnesses, and not upon the writing."

[3] The Iowa statute of frauds is as follows: "Except when otherwise specially provided, no evidence of the following enumerated contracts is competent; unless it be in writing and signed by the party charged or by his authorized agent: First. Those in relation to the sale of personal property, when no part of the property is delivered and no part of the price is paid." Code of Iowa 1897, § 4625; Compiled Code of Iowa, § 7332. The construction given to this statute by the highest court of that state is controlling here. Swiss Oil Corporation v. Eastern Gulf Oil Co. (C. C. A.) 297 F. 28; Walker et al. v. Hafer, 170 F. 37, 95 C. C. A. 311, 24 L. R. A. (N. S.) 315. That court has held that the memorandum must be complete in itself, leaving nothing to be supplied by parol; that parol evidence is not admissible to complete or vary an insufficient writing. Lynn v. Richardson, 151 Iowa, 284, 130 N. W. 1097; American Oak Leather Co. v. Porter et al., 94 Iowa, 117, 62 N. W. 658; Watt and Others v. Wisconsin Cranberry Co., 63 Iowa, 730, 18 N. W. 898; Nebraska Bridge Supply & Lumber Co. v. Owen Conway & Sons, 127 Iowa, 237, 103 N. W. 122.

This is the general rule. Greenleaf on Evidence, § 268, states it as follows: "It must all be collected from the writings, verbal testimony not being admissible to supply any defects or omissions in the written evidence." In Ryan v. United States, 136 U. S. 68, 83, 10 S. Ct. 913, 918 (34 L. Ed. 447) the court said: "The principle is well established that a complete contract binding under the statute of frauds may be gathered from letters, writings, and telegrams between the parties relating to the subject-matter of the contract, and so connected with each other that they may be fairly said to constitute one paper relating to the contract."

Exhibit C can only be made a part of the written contract by proof of a distinct oral contract that it should be so connected with Exhibit D; no connection whatever appearing from a comparison of the writings themselves, nor from the surrounding circumstances or situation of the parties. This cannot be done without violation of the statute of frauds. 25 R. C. L. p. 680, § 318; 27 Corpus Juris, p. 267, § 318; Salmon Falls Manufacturing Co. v. Goddard, 14 How. 446, 14 L. Ed. 493. Eliminating the oral testimony, therefore, as to Exhibit C, plaintiff has failed to prove the contract as pleaded.

Apparently to meet the situation developed by the evidence, claim is made in argument by plaintiff that Exhibit C is not an essential part of the contract, but mere surplusage, hence that proof is not required thereof; that the contract is ambiguous, and therefore parol evidence is admissible to explain it; and that it was for the jury to say whether the contract was in fact for the surplus claimed to be shown in Exhibit C. It is plaintiff's theory apparently that Exhibit C can be shown by parol testimony, not as a part of the contract, but as evidence of the surplus material sold, and that such evidence is admissible to explain the term "surplus," as used in the contract, which term plaintiff argues makes the contract ambiguous. (No such claim of ambiguity was made in the complaint.) Of course, in its result this accomplishes the same purpose as making Exhibit C a part of the contract. The same end is achieved by a different process of reasoning, ingenious, but we think unsound. While claiming the contract is ambiguous, it is also contended that the word "surplus," used therein, is definite enough to allow proof of what the surplus really was.

Plaintiff bases such argument on the doctrine of the so-called "requirement" cases. T. W. Jenkins & Co. v. Anaheim Sugar Co., 247 F. 958, 160 C. C. A. 658, L. R. A. 1918E, 293; Cold Blast Transp. Co. v. Kansas City Bolt & Nut Co., 114 F. 77, 81, 52 C. C. A. 25, 29 (57 L. R. A. 696), where this court said: "A contract for the future delivery of personal property is void, for want of consideration and mutuality, if the quantity to be delivered is conditioned by the will, wish, or want of one of the parties; but it may be sustained if the quantity is ascertainable otherwise with reasonable certainty." The meaning of the word "surplus" is quite different from the meaning of the words relating to "requirements," as used in contracts construed in the cases cited. The defendant here was a manufacturer. It was not a producer of steel. What would be surplus of such manufacturer would depend entirely upon its

own volition in the carrying out of its plans. Surplus is not a fixed, definite thing. The surplus of to-day may not be the surplus of to-morrow, nor the surplus of September 8, 1921, the surplus at the time of shipment. Defendant's surplus changed with its changing plans. There is no standard by which it could be determined. However, we are not called upon to determine whether the term "surplus," as used in this contract, may be explained by oral testimony under the rule announced in the "requirement" cases, for the reason that the agreement provides how the surplus was to be shown, viz. by a list to be prepared by defendant subsequent to the signing of Exhibit D and furnished to plaintiff.

[4] We reach the conclusion that the contract involved here is not ambiguous. It seems to be an agreement to purchase at $1.25 per hundred weight defendant's surplus stock of cold rolled steel, mild steel bars, angles, and sheet steel, such surplus to be determined by a list furnished by the defendant showing the approximate quantities thereof, said quantities being subject to check of count and weight at time of loading, and further, if defendant, after making and furnishing such list, should desire at time of shipment to dispose of more material, not included in the list, plaintiff was to purchase it at the same price. Of course, the agreement might have been made clearer; but we think it is understandable from its own terms. If it had been desired to make Exhibit C the list showing surplus sold, there would have been no need of providing for a future list. It would have been easy to have attached Exhibit C to Exhibit D and made it a part of the contract.

[5] We do not see that the expression used in the contract, "quantities specified being approximate and subject to count," makes the contract ambiguous, as contended. Plaintiff seems to be of the opinion that this refers to quantities then specified, and hence in some way connects up with Exhibit C. We cannot give this effect to these words. The approximate quantities referred to are those in the list to be furnished by the defendant subsequent to the execution of Exhibit D. To sustain the defendant's theory of ambiguity the court would have to write words into the contract not there found. This is not the business of courts. It is evident that both parties to this controversy regard Exhibit D as the real contract. The attempted introduction of parol evidence to show that Exhibit C was regarded as a statement of the surplus sold was, like the attempt to prove it as part of the contract, in violation of the Iowa statute of frauds.

[6] It is frankly conceded by counsel for plaintiff that, if it conclusively appear "that what the plaintiff bought was to be determined by what the defendant might will, want, or wish," the judgment was right and should be affirmed; in other words, the contract would be unenforceable, because of lack of mutuality. It seems to us that this is exactly what the evidence shows. What specific material could plaintiff claim it had purchased? What particular bars of steel could plaintiff take from defendant's place of business by virtue of the contract? Clearly none, until such time as a list had been furnished. Plaintiff by the agreement itself, without the list subsequently to be furnished, bought nothing. It could not have taken Exhibit D to defendant's place of business and have insisted upon the turning over to it of a single bar of steel. The list to be furnished was an essential and determinative part of the agreement, and defendant was under no obligation to list therein any material, except such as it might desire to dispose of as its surplus.

The correspondence subsequent to the making of Exhibit D confirms this conclusion. On the 15th of September, 1921, plaintiff wired defendant that they were "waiting for list you promised." In reply to this defendant wrote as follows: "The list is all ready, with the exception of checking over to determine *what we will retain,* and, just as soon as this is done, the list will be mailed to you." Again, on September 19, 1921, defendant wrote a letter to plaintiff, in which occurs this: "We appreciate that you are anxious to get this list, but we are just as anxious to determine what stock we want to move and get it moved." Again, on September 23, 1921, in response to a letter from plaintiff, defendant wrote as follows: "Regarding hexagon and round cold rolled, we will not list any hexagon, as we have concluded make our own cap screws; will mail list *what we have for disposal* early as possible." On September 4, 1921, plaintiff wrote to defendant a letter from which we quote: "We are very much disappointed at this, because you showed us the hexagon and it was included in our original purchase. We presumed you might retain *some items in part, and probably a few of them in whole, but nothing was said of retaining any of the hexagon.* * * * It causes us extreme inconvenience not to know definitely *the quantities we are to get, which no doubt is due to delay in sending us corrected list.*"

This correspondence shows that Exhibit C

was not considered as a list showing the surplus, but that a new list was to be furnished of such material as the defendant had for disposal, after it had determined what it desired to retain. We are satisfied there was such lack of mutuality in this contract as to make it unenforceable. The Supreme Court of Iowa, in a very carefully considered case, Wickham & Burton Coal Co. v. Farmers' Lumber Co., 189 Iowa, 1183, 1190, 179 N. W. 417, 420 (14 A. L. R. 1293), says: "A contract to sell personal property is void for want of mutuality if the quantity to be delivered is conditioned entirely on the will, wish, or want of the buyer." See, also, 13 C. J. p. 339, § 191. We think all that is necessary as to the law of this subject is said by this court in Cold Blast Transp. Co. v. Kansas City Bolt & Nut Co., 114 F. 77, 52 C. C. A. 25, 57 L. R. A. 696, and A. Santaella & Co. v. Otto F. Lange Co., 155 F. 719, 84 C. C. A. 145. The trial court committed no error in sustaining the motion for a directed verdict.

The judgment is affirmed.