In re the MARRIAGE OF William E. MASTERSON and Janet J. Masterson

Upon the Petition of William E. Masterson, Appellant,

and concerning

Janet J. Masterson, Appellee.

No. 89–549.

Court of Appeals of Iowa.

Jan. 25, 1990.

**652**

Garold F. Heslinga of Heslinga, Heslinga, Dixon & Grotewold, Oskaloosa, for appellant.

Greg A. Life, Oskaloosa, for appellee.

Considered by DONIELSON, P.J., and SACKETT and HABHAB, JJ.

HABHAB, Judge.

Appellant appeals from the district court's denial of his application for modification and declaratory judgment. We affirm.

The marriage of William and Janet Masterson was dissolved by decree filed January 20, 1984. The decree divided the parties' property and ordered William to pay Janet alimony of $500 per month until the death of either party or the remarriage of Janet. William was also required to pay $1000 toward Janet's attorney fees. In February 1984, William filed an appeal and Janet filed a cross-appeal from this decree. Subsequent to the appeals, the parties attempted, without success, to negotiate a settlement concerning the alimony award.

### Facts

William's attorney, on March 27, 1984, sent a letter to Janet's attorney advising that he would drop the appeal if Janet would accept in lieu of the alimony award rehabilitative alimony for three years. Janet's attorney responded, in a letter of April 17, 1984, that his client would settle the pending appeal by accepting in lieu of alimony an additional property settlement of $30,000, payable at $500 per month. William's attorney responded by letter on April 24, 1984, that his client would accept Janet's April 17th offer if the number of $500 monthly payments were reduced to thirty-six. William, however, apparently had a change of heart, and on May 2, 1984, his attorney wrote and advised that he would accept Janet's proposed settlement of April 17th.

On May 17, 1984, Janet's attorney then prepared and mailed to William's attorney a written settlement agreement. This document included a provision that alimony was to cease on January 1, 1985. Janet's attorney pointed out in his correspondence that this provision had not been part of the April 17th letter. Indeed, the April 17th letter contained no provision concerning either the date on which alimony was to terminate or the commencement date of the $500 monthly property settlement payments.

William did not sign the settlement agreement until December 10, 1984. His attorney returned that agreement on December 11, 1984. Janet declined to sign the agreement. On April 5, 1985, the supreme court issued procedendo advising the appeals were dismissed.

In January 1988, William filed an application for modification and declaratory judgment. He sought enforcement of the "agreement" between the parties concerning alimony or, alternatively, a modification of the alimony award due to a change in circumstances. The district court rejected this application and William appeals.

Since the dissolution, Janet has secured employment as a clerical worker. She earned $7,472 from this employment in 1987. William's health has deteriorated since the dissolution. He has had heart problems which necessitated quintuple bypass surgery and now requires him to take medication. He has been able to continue farming and also sells real estate.

### I.

■ In this equity action, our review is de novo. Iowa R.App.P. 4. We have a duty to examine the entire record and adjudicate anew rights on the issues properly presented. *In re Marriage of Steenhoek*, 305 N.W.2d 448, 452 (Iowa 1981). We give weight to the fact findings of the trial court, especially when considering the credibility of witnesses, but are not bound by them. Iowa R.App.P. 14(f)(7).

■ William asserts the trial court erred in not concluding that the parties entered into an enforceable agreement of settlement. As the Iowa Supreme Court noted in *Shell Oil Company v. Kelinson*, 158 N.W.2d 724, 728 (Iowa 1968):

The rule is well settled that in a contract by offer and acceptance, the acceptance must conform strictly to the offer in all its conditions, without any deviation or condition whatever. If there is any qualification attached which calls for further understanding or correspondence in order to determine the final meeting of the minds of the parties, the acceptance falls short of closing the contract.

■ William's attorney's letter of April 24, 1984, did not unequivocally accept Janet's proposition of April 17th, but instead interjected a qualification. As such, William rejected Janet's April 17th offer, and by his letter of the 24th of April, he submitted a counteroffer. *See* Restatement (Second) of Contracts § 59 (1977). Since William had previously rejected Janet's offer, his letter of May 2nd accepting Janet's offer of April 17th was a nullity because there was no longer an offer outstanding which he could accept. We thus deem this correspondence to be in the nature of an offer by William to settle the appeal. Janet's response, by including a new term, again fails to constitute an acceptance. *See id., see also O'Brien v. Fitzhugh*, 204 Iowa 787, 790, 215 N.W. 944, 946 (Iowa 1927). It, too, is in the nature of a counteroffer. *See* Restatement (Second) Contracts § 59 (1977).

The final offer, which was the written settlement agreement, was made on May 17, 1984. No specific time for acceptance was set forth. William did not sign the agreement until December 10, 1984, almost seven months later.

Appellee argues on appeal and the trial court held that because of the unreasonable passage of time between the date the written offer was made and the date of its acceptance, the power of acceptance lapsed. As stated in the 1884 case of *Ferrier v. Storer*, 63 Iowa 484, 19 N.W. 288 (1884),

The offer, unless sooner withdrawn, stands during the time limited, or, if there is no express limitation, during a reasonable time. Until the end of that time the offer is regarded as being constantly repeated. After that there is no offer, and, properly considered, nothing to withdraw. The time having expired, there is nothing which the acceptor can do to revive the offer, or produce an extension of time.

*Id.* at 489, 19 N.W. at 289–90 (citation omitted).

As one noted authority on contracts points out:

If the offeror has not communicated a specific time limit with sufficient definiteness, the power of acceptance by the offeree continues for a reasonable time. This is the time that a reasonable man in the exact position of the offeree would believe to be satisfactory to the offeror.

*Corbin on Contracts* § 63, p. 147 (1963) (footnote omitted).

The trial court found, and we agree that William's acceptance of Janet's offer six months after its communication to him constituted a late acceptance. The late acceptance in effect is a counteroffer which must in turn be accepted by the original offeror to create a contract. *Morrison v. Rayen Inv., Inc.*, 97 Nev. 58, 624 P.2d 11, 12 (1981). The evidence is clear that Janet did not accept William's counteroffer.

■ William argues on appeal that the exchange of letters between the parties constituted an enforceable agreement and that the written settlement agreement was merely intended to memorialize the agreement the parties had already reached. We have already held that because of the counteroffer that was made by William through the letter correspondence, there was no offer pending for him to accept. In so ruling, we recognize that a contract may be made by correspondence and, aside from the statute of frauds, may be partly oral and partly in writing. *Lynn v. Richardson*, 151 Iowa 284, 288, 130 N.W. 1097, 1098 (1911).

In this respect, if a contract is to be made by letters, the letters must contain all that is necessary to form a contract, and generally, if parties intend their correspondence or oral negotiations to be merely steps leading to a binding contract, no contract is made until final consummation of the negotiations through execution of the formal written agreement. *Id.* 130 N.W. at 1098–99. The terms of the agreement must be definitely fixed and complete so that nothing remains except to reduce the agreement to a formal written contract. *Severson v. Elberon Elevator, Inc.*, 250 N.W.2d 417, 420 (Iowa 1977); *Elkader Coop. Co. v. Matt*, 204 N.W.2d 873, 875 (Iowa 1973); *Dillon v. City of Davenport*, 366 N.W.2d 918, 925 (Iowa 1985).

It goes without saying that whether preliminary negotiations actually ripen into an oral contract depends upon the intention of the parties as gleaned from the facts of the case. *Severson*, 250 N.W.2d at 421. As the supreme court stated in *Severson:*

> Factors to be considered in seeking to ascertain whether the parties intended to be bound prior to execution of a written document include whether the contract is of a class usually found to be in writing, whether it is of a type needing a formal writing for its full expression, whether it has few or many details, whether the amount is large or small, whether the contract is common or unusual, whether all details have been agreed upon or some remain unresolved, and whether the negotiations show a writing was discussed or contemplated.

*Id.*

When the letters are read as a unit, it is clear that only part of the final terms are embodied therein. The important terms of when the alimony was to cease and when the property settlement payments were to commence were omitted. These terms were set forth in the written settlement agreement. We conclude, as the trial court did, that the letters themselves did not constitute a contract but only an expression of terms to be formally memorialized.

Similarly, we find William has failed to substantiate a claim of specific performance based on the theory of promissory estoppel. The three elements of promissory estoppel are: "(1) a clear and definite agreement, (2) proof that the party seeking to enforce the agreement reasonably relied upon it to his detriment,[1] and (3) a finding that the equities support enforcement of the agreement." *Matter of Estate of Graham*, 295 N.W.2d 414, 418 (Iowa 1980). William has failed to demonstrate the first element of promissory estoppel, the existence of a clear and definite agreement. As noted above, until the written offer of May 17 was made, what occurred prior thereto was a classic example of a series of offers and counteroffers.

## II.

William alternatively sought a modification of the dissolution decree's alimony provision. In order to modify the original alimony award, William has the burden to show there has been a substantial change in circumstances since the entry of the decree. *In re Marriage of Skiles*, 419 N.W.2d 586, 588 (Iowa App.1987).

Modification of the alimony provisions of a dissolution decree is justified only if there has been some material and substantial change in the circumstances of the parties, financially or otherwise, making it equitable that other terms be imposed. *Thayer v. Thayer*, 286 N.W.2d 222, 223 (Iowa App.1979). The burden rests on the party seeking modification to establish such a change of circumstances by a preponderance of the evidence. *Id.; Mears v. Mears*, 213 N.W.2d 511, 513 (Iowa 1973). Circumstances that have changed, to justify modification of alimony, must be those that were not within contemplation of the trial court when the original decree was entered. *In re Marriage of Full*, 255 N.W.2d 153, 159 (Iowa 1977). Such changes must be more or less permanent

---

1. It cannot go unnoticed that although William made the $500 a month payments, each draft that was issued was noted as alimony. In addition, his tax returns reveal that he claimed the payments as alimony, and Janet included the payments as income in the form of alimony.

or continuous, not temporary. *In re Marriage of Carlson*, 338 N.W.2d 136, 141 (Iowa 1983).

The knowledge of the trial court at the time the award is made is the basis for determining whether there has been a change of circumstances. *Full*, 255 N.W.2d at 159; *Leo v. Leo*, 213 N.W.2d 495, 496 (Iowa 1973). The original decree is entered with a view to reasonable and ordinary changes that may be likely to occur in the relations of the parties. *Mears*, 213 N.W.2d at 514.

Upon our review of the record, we agree with the trial court that William has failed to sustain his burden of proof to show a substantial change in circumstances warranting a modification of alimony. Janet was healthy and capable of securing employment at the time of the dissolution. We believe it was clearly envisioned by the trial court when dissolution was granted that she would obtain some form of employment paying at or near minimum wage.

William's state of health has not affected his ability to farm or engage in a new line of business. While William's change in health is a factor to be considered under Iowa Code section 598.21(3)(e), we do not believe it rises to the level of a substantial change in circumstances warranting modification of alimony.

AFFIRMED.

DONIELSON, P.J., concurs.

SACKETT, J., specially concurs without opinion.