## FREMON

v.

## W. A. SHEAFFER PEN CO.
### No. 14819.

United States Court of Appeals
Eighth Circuit.
Feb. 2, 1954.

Edmund C. Rogers, St. Louis, Mo. (Lawrence C. Kingsland, Estill E. Ezell, Rodney Bedell, St. Louis, Mo., and Rob-

ert H. Walker, Keokuk, Iowa, were with him on the brief), for appellant.

Fred T. Williams, Chicago, Ill. (E. H. Pollard, Fort Madison, Iowa, Sidney Neuman, Thiess, Olson & Mecklenburger, Chicago, Ill., and Pollard, Palmer & Lawse, Fort Madison, Iowa, were with him on the brief), for appellee.

Before GARDNER, Chief Judge, and STONE and THOMAS, Circuit Judges.

THOMAS, Circuit Judge.

This is an appeal by the plaintiff from a summary judgment for the defendant. The action filed on February 17, 1951, was based upon an alleged oral contract between plaintiff and defendant entered into on November 8, 1927. Jurisdiction of the federal court was predicated upon diversity of citizenship and on unliquidated claims for $600,000 with interest.

The plaintiff is a lawyer living in St. Louis County, Missouri, where he was employed from 1924 until 1946 by the Missouri Southern Railroad Company. He was acquainted with Avery S. DeHaven until his death in 1941. DeHaven was a machinist employed by the same railroad company as Fremon.

The defendant is a Delaware corporation, having a place of business at Fort Madison, Iowa.

The complaint alleges that on or about March 22, 1926, plaintiff and DeHaven entered into a contract with defendant by the terms of which they assigned to defendant certain inventions and patent applications relating to fountain pen racks and desk stands and agreed to offer for possible acquisition by defendant for additional compensation any later inventions made by them relating to fountain pen racks and desk stands.

That during 1927 plaintiff made an additional invention relating to the same subject matter which he offered to defendant; and that they then agreed that plaintiff would not offer the invention to any competitor of defendant nor file a patent application therefor without defendant's consent, in consideration for which defendant promised to pay plaintiff amounts representative of the value to defendant of the inventions and patent applications covered by the contract of March 22, 1926, in addition to the amounts previously paid, and that plaintiff complied with that agreement.

It is further alleged that by virtue of the ownership of the patent applications the defendant has enjoyed exclusive rights to certain types of fountain pen racks and desk stands, enabling it to build up a substantial business in such articles so that the value of the rights obtained under the contract of March 22, 1926, has been very great; that defendant has never accounted to plaintiff for the sums due him under the 1927 contract, which amounts continued to accumulate at least until November 18, 1947; and that the reasonable value to defendant, to which plaintiff is entitled, of the inventions, patent applications, and patents assigned by the contract of March 22, 1926, is $600,000, for which judgment is demanded.

In its answer defendant admits the execution of a written contract with plaintiff and Avery S. DeHaven under date of March 25 (not March 22), 1926, and avers that full consideration was paid therefor in complete discharge of all obligations imposed upon the defendant by that agreement. The defendant further pleads:

(A) The complaint fails to state a claim upon which relief can be granted;

(B) That the alleged right of action is barred by the Five-Year Statute of Limitations of the State of Iowa;

(C) That the alleged oral agreement is not enforceable under the Iowa Statute of Frauds;

(D) The action is barred by plaintiff's laches;

(E) The claim is barred by the Iowa Statute of Frauds.

It is further alleged in the answer that any statement of defendant that any further compensation would ever be made to plaintiff and DeHaven in adjustment of the value of the inventions and/or patents assigned would represent

a voluntary payment from net profits to the plaintiff.

The plaintiff then filed depositions of Jules A. Fremon and Craig R. Sheaffer; the parties filed the correspondence which passed between them from the beginning of the transactions between them, the written contract of March 25, 1926, and other papers including patents, defendant's request for admission of facts and plaintiff's response thereto. The defendant then filed a motion for summary judgment and to dismiss, and thereafter plaintiff's affidavit in opposition to defendant's motion to dismiss was filed.

On January 12, 1953, the court filed a Memorandum Opinion and Order sustaining defendant's motion for summary judgment and dismissing the complaint. D.C., 111 F.Supp. 39. This appeal followed.

In reviewing the evidence the court observed that "The action itself, filed on February 17, 1951, is based upon a claimed oral contract said to have been made more than twenty-three years before, between plaintiff and defendant on November 8, 1927. Communications and relations between plaintiff and defendant entirely ceased from 1934 until February, 1946, when plaintiff asked that the unfinished matters between the parties be closed. Defendant denied the existence of any unfinished matters, whereupon, after five years more lacking a few days, plaintiff commenced this action."

Referring to the written agreement between the parties of March 25, 1926, the court found that the contract effected an assignment from plaintiff and DeHaven of all inventions made by them up to that time relating to fountain pen racks and desk stands for a consideration of $2,000, which had been paid by defendant. The written agreement also made provision for the offer to defendant of all related inventions later made by plaintiff and DeHaven.

On January 19, 1927, plaintiff wrote to defendant forwarding a model of a new device, identified as defendant's Exhibit 11. The action is based upon an alleged oral agreement made at a conference between plaintiff and C. R. Sheaffer in Fort Madison, Iowa, November 8, 1927. Plaintiff has no contemporaneous written memorandum of it. As noted, *supra*, the alleged oral agreement provided that on the "consideration that plaintiff would not offer said additional invention to any competitor of defendant, nor file patent application on the same, unless authorized by defendant to do so, defendant agreed and promised to adjust compensation to plaintiff under the contract of March 22 (25), 1926, and to pay to plaintiff amounts representative of the value to defendant of the inventions and patent applications covered by said contract of March 22, 1926, in addition to the amounts previously paid under said contract of March 22, 1926."

In his deposition covering this oral agreement of November 8, 1927, plaintiff claims that defendant agreed that anything plaintiff might do, or refrain from doing, with reference to Exhibit 11 that benefited defendant, would be adequately compensated. He claims that it was agreed that when the Wahl interference was finished plaintiff and defendant were to have a conference at which they were to consider everything that had occurred "after now and up to that time, and upon considering that, were to agree what was the fair value of the rights which were conveyed to the Sheaffer Company by the Fremon and DeHaven assignment of 1926", and when *"we have reached that agreement, then the Sheaffer Company is to pay me an amount that represents fair compensation for the value of those rights, less the sum of $2,000.00."*

The Wahl interference involved a dispute as to patent rights between the defendant and Wahl, another manufacturer of fountain pens. In 1934, "the Wahl interference had been settled for years."

And the court found that "After March 25, 1926, Fremon and defendant

never reached an agreement with respect to a basis for calculating any amount to be paid to Fremon. There was no conference held between plaintiff and defendant between about November 8, 1927, and 1933 or 1934. There was no correspondence or communication between plaintiff and defendant between about 1934 and about 1946."

One of the contentions of plaintiff in this case is that DeHaven had no interest in the benefits to be derived through Exhibit 11. The court observed, however, that in their correspondence in 1933 plaintiff had recognized that De-Haven had an interest therein.

Again, it was recognized by plaintiff and his counsel that the alleged oral agreement between plaintiff and defendant of November 8, 1927, called for another conference to determine the compensation for the claimed agreement of 1927, and that such conference was to be had when the "Wahl interference is finished." On October 2, 1929, defendant informed plaintiff that the Wahl interference was concluded. The correspondence indicates that plaintiff and defendant recognized that DeHaven had an interest in the unfinished matters which were to be adjusted upon the conclusion of the Wahl interference.

The court found further that plaintiff has not stated a claim upon which he is entitled to relief, for the reason that the record does not show the existence of a complete contract between plaintiff and defendant which could be the basis of a suit; that the minds of the parties never met upon the subject matter or the price and terms of their agreement. They never progressed any further than to agree upon some general terms. The claimed oral agreement is uncertain, indefinite and vague as to material matters; it was but preliminary to a subsequent agreement to be effected in which these material matters would be determined and agreed upon by both parties. Neither the court nor a jury could determine what the parties would have agreed upon at such a conference as they had in mind. And the court in

so finding relied upon Lynn v. Richardson, 151 Iowa 284, 288, 130 N.W. 1097; Federal Land & Securities Co. v. Hatch, 147 Iowa 18, 25, 125 N.W. 837; Krutsinger v. School Twp., 219 Iowa 291, 257 N.W. 797; National Bank of Kentucky v. Louisville Trust Co., 6 Cir., 67 F.2d 97, 102; and Richmond Screw Anchor Co., Inc. v. Umbach, 7 Cir., 173 F.2d 532, 534.

The court further found that plaintiff's alleged cause of action was barred by the Iowa statute of limitations, §: 614.1, Code of Iowa, 1950, I.C.A., which requires actions of this sort to be commenced within five years. Here the alleged oral contract called for a settlement or readjustment "when the Wahl interference is finished." Plaintiff was informed by letter of October 2, 1929, that the Wahl interference was settled. Yet plaintiff did not bring this action until 1951. In addition to the Iowa cases cited by the court reference is also made to Kithcart v. Metropolitan Life Ins. Co., 8 Cir., 150 F.2d 997, 1000.

The court also found that plaintiff's alleged cause of action is barred by the doctrine of laches.

In the trial court the plaintiff sought to avoid the bar of the statute of limitations, and he interpreted the alleged contract to mean that the adjustment as to compensation paid under the original contract of March 25, 1926, was to be made upon the expiration of the patents. In his letter of demand of February 7, 1946, plaintiff said the two patents, Nos. 1,641,846 and 1,675,543, "granted to your company as assignor of the rights of myself and Avery S. DeHaven both have now expired", and he suggested that the "unfinished matter pending between us" be closed. The court points out that if that theory be accepted as the proper point from which to make the accounting then the oral contract sued upon falls under the ban of an Iowa statute, § 622.32, Code of Iowa, 1950, I. C.A., which provides:

"Except when otherwise specially provided, no evidence of the following enumerated contracts is compe-

tent, unless it be in writing and signed by the party charged or by his authorized agent. * * *

"4. Those that are not to be performed within one year from the making thereof."

And the court relying upon the decision of the Supreme Court of Iowa in Carmichael v. Stone, 243 Iowa 904, 54 N.W.2d 454, and the opinion of this court in Midland Steel Sales Co. v. Waterloo Gasoline Engine Co., 8 Cir., 9 F.2d 250, held that the alleged oral agreement sued upon falls within the ban of the Iowa statutes cited.

The court also found that the action must be dismissed under Rule 12(b), Fed.Rules Civ.Proc. 28 U.S.C.A., for failure to have DeHaven, or his successor in interest, joined as an indispensable party plaintiff.

The plaintiff contends here that the court erred:

1. In holding that there was not a complete contract and in failing to hold that there was a contract complete except for amount of compensation which is supplied by law.

2. In holding that this action is barred by the statute of limitations on motion for summary judgment. The facts, it is urged, are consistent with (a) stay of the statute by action of the defendant preventing a condition precedent from being fulfilled; and (b) delay of the statute until the final entry in an open account or until repudiation of the obligation. Finally, the summary judgment was wrong because it disregarded contested fact issues.

3. In granting summary dismissal for laches. In Iowa the doctrine of laches does not apply to an action at law not barred by the statute of limitations.

4. In applying the statute of frauds, because the contract could have been performed within the year, and because it was executed by Fremon, and Sheaffer entered into possession of the property.

5. In holding DeHaven an indispensable party when he was not a party to the contract in suit. At most, there is

a hotly contested fact dispute as to whether DeHaven had anything to do with the present contract.

The first question for decision, therefore, is whether the plaintiff has stated a claim upon which he is entitled to relief in a court of law. The trial court held that he had not done so because his "claimed oral agreement [of November 8, 1927] is uncertain, indefinite and vague as to material matters which go to the very heart and purpose of such an agreement."

■ The only evidence of that alleged contract is found in the deposition of plaintiff Fremon. It was the gist of a conference between him and Sheaffer. No other person was present, and no written memorandum was made. His statement of the terms of that contract are not squarely disputed by Sheaffer, and they must, therefore, be accepted by the parties and the court. Their meaning only is involved here. The gist of that contract here under consideration is as follows:

"* * * when the Wahl interference is settled, you and I [Fremon] are to have a conference (Sheaffer and I) at which we are to consider everything that has occurred after now and up to that time, and upon considering that we are to agree what the fair value of the rights, what was the fair value of the rights which were conveyed to the Sheaffer Company by the Fremon and DeHaven assignment of 1926. * * * And when we have reached that agreement, then the Sheaffer Company is to pay me an amount that represents fair compensation for the value of those rights, less the sum of $2,000.00."

■ It is plaintiff's contention that the contract was complete, save only for the amount of compensation to be paid plaintiff and DeHaven. If this analysis is correct, it follows that the court or a jury in a proper case could supply that. However, it is apparent that more is involved than the amount of compensation. The basis for determining the amount of compensation was to be deter-

632

mined by a future agreement to be arrived at by the parties "when the Wahl interference is settled." Then the parties were "to consider everything that has occurred after now and up to that time, and upon considering that *we are to agree* what * * * was the fair value of the rights which were conveyed to the Sheaffer Company by the Fremon and DeHaven assignment of 1926." Upon that basis "fair compensation for the value of those rights * * *" was to be estimated.

Clearly more than the amount of compensation was left for future determination. Neither a court nor a jury is authorized to guess what values Fremon and Sheaffer might have placed upon all the factors which were left for their consideration in arriving at a basis on which to determine "fair compensation" for the value of those rights. The authorities cited and relied upon by the court are in point; and there are many others. Lynn v. Richardson, 151 Iowa 284, 288, 130 N.W. 1097; Williston on Contracts (Rev.Ed., 1936), Vol. I, § 45, p. 131; Gunn v. Newcomb, 82 Iowa 468, 48 N.W. 989; National Bank of Kentucky v. Louisville Trust Co., 6 Cir., 67 F.2d 97, 102. The law is tersely stated in Richmond Screw Anchor Co., Inc. v. Umbach, 7 Cir., 173 F.2d 532, 534, as follows:

> "Where an essential element of a contract is reserved for future agreement, no legal obligation as to such element arises until such future agreement is made." Citing authorities.

 The court correctly held, also, that plaintiff's alleged claim is barred by the Iowa five-year statute of limitations, § 614.1, Code of Iowa, 1950, I.C.A., the Iowa law being the controlling law, Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, and there being no applicable federal statute, Amy v. City of Dubuque, 98 U.S. 470, 25 L. Ed. 228. The alleged oral contract sued upon called for settlement "when the Wahl interference is finished", notice of which settlement was given plaintiff in October, 1929. It was then, according to the alleged oral contract, that the parties were to have a conference and settle the alleged claim sued upon. But plaintiff argues that the settlement was postponed by defendant from time to time, thus delaying the running of the statute. However, as observed by the trial court: "It is the law of Iowa that 'a creditor may not by his own act or neglect delay or postpone the running of the statute.'" Citing Lovrien v. Oestrich, 214 Iowa 298, 299, 242 N.W. 57. See, also, Prescott v. Gonser, 34 Iowa 175, 179. It will be observed, also, that Fremon (the plaintiff) was under no obligation to consent to the delays which he now claims postponed the running of the statute of limitations. Under these circumstances he was at liberty to begin this action at any time after the Wahl interference was settled in 1929. In such a situation an alleged debtor is not estopped to plead the statute of limitations.

We are persuaded, also, that the correspondence between the parties during the period of 1929 to 1933, does not show that the defendant requested a postponement of a conference to close a contract. The correspondence discloses that defendant sought delays because no profits were being realized from the patent device and that no contract existing required any further payments to plaintiff but that in the event substantial profits should be realized from that source an additional voluntary payment would be made.

Plaintiff next contends that the court erred in finding and holding that plaintiff's alleged cause of action is barred by the doctrine of "laches, stale claims [or] estoppel." The evidentiary facts on which this finding is based are that the correspondence shows that in 1929 plaintiff recognized that DeHaven was asserting an interest in the subject matter of this action and that defendant at that time denied that either plaintiff or DeHaven had any such interest. Defendant then asserted that all matters between the parties were closed. After

that, from about 1933 or 1934 until February, 1946, and from March 1, 1946, until November, 1950, there were no communications between them; and this action was not commenced until February, 1951, 10 years after DeHaven's death. Clearly it matters not whether the action be referred to as stale or whether it is barred by the Iowa statute of limitations. The result is the same.

The court further held that the alleged oral agreement of November 8, 1927, upon which this action is predicated falls within the ban of the Iowa statute of frauds.

Section 622.32, Code of Iowa, 1950, I.C.A., provides that: "Except when otherwise specially provided, no evidence of the following enumerated contracts is competent, unless it be in writing and signed by the party charged or by his authorized agent. * * *

"4. Those that are not to be performed within one year from the making thereof."

And the statute of frauds, § 554.4 of the Code of Iowa, 1950, I.C.A., provides: "A contract to sell or a sale of any goods or choses in action shall not be enforceable by action unless the buyer shall accept part of the goods or choses in action so contracted to be sold or sold and actually receive the same or give something in earnest to bind the contract, or in part payment, or unless some note or memorandum in writing of the contract or sale be signed by the party to be charged or his agent in that behalf."

■ The question here relates to when plaintiff's alleged cause of action accrued. We agree with the conclusion of the trial court that plaintiff's alleged cause of action, if it existed at all, accrued under the alleged oral contract when the Wahl interference was settled and notice thereof was given plaintiff in October, 1929.

■ Finally, the plaintiff contends that the court erred in finding and holding "* * * that the action must be dismissed under the provision of Rule 12(b) by reason of the failure to have

DeHaven, or his successor in interest, joined as an indispensable party plaintiff." Rule 19(a) provides that "* * persons having a joint interest shall be made parties and joined on the same side as plaintiffs or defendants."

Plaintiff's contention here is that DeHaven had no interest in the subject matter of this action. The court after reviewing the record found to the contrary.

This contention of plaintiff is not entirely consistent with the pleadings and with the contract of March 25, 1926, between Fremon and DeHaven as parties of the first part and defendant as party of the second part, defendant's Exhibit 1. By the terms of that contract the parties of the first part sold and transferred to defendant certain inventions made by them jointly, consisting of "new and useful improvements in fountain pen racks and fountain pen desk stands" for a consideration to be agreed upon. In the same contract Fremon and DeHaven agreed "jointly and severally" to sell, assign and transfer to the defendant the title to any and all inventions thereafter made, directed to fountain pen racks and desk stands.

The complaint alleges that in the following year, 1927, the plaintiff made an additional invention relating to fountain pen racks and desk stands which he offered to defendant, and that defendant would neither accept nor reject the additional invention, "but on consideration that plaintiff would not offer said additional invention to any competitor of defendant nor file a patent application on the same, unless authorized by defendant to do so", just compensation to the plaintiff would be made "under the contract of March 22 (25), 1926."

And the complaint alleges that "Plaintiff avers that the reasonable value to defendant to which plaintiff is entitled, of the inventions, patent applications, and patents assigned by the contract of March 22(5), 1926, is Six Hundred Thousand Dollars", and the prayer of the complaint is for judgment in that amount.

Assuming that DeHaven had no interest in the invention alleged to have been made by plaintiff in 1927, certainly on the face of this record he had an interest in the sums payable under the 1926 contract. The partnership between plaintiff and DeHaven in the inventions conveyed by the 1926 contract is also shown by plaintiff's admissions in his correspondence and in his deposition.

The finding and decision of the court is that "* * * it is clear that the interests of the plaintiff and DeHaven in whatever award might be made here are inseparable. No final decree could be entered without affecting DeHaven's interest." That conclusion is clearly supported both by the record and the authorities cited by the court. Shields v. Barrow, 17 How. 129, 130 139, 58 U.S. 129, 130, 15 L.Ed. 158, and Hale v. Campbell, 8 Cir., 127 F.2d 594, 596.

Affirmed.