700 So.2d 22 (1997)
Carol Ann MAY, Appellant/Cross-Appellee,
v.
SESSUMS & MASON, P.A., Appellee/Cross-Appellant.
Nos. 96-00025, 96-01683.
District Court of Appeal of Florida, Second District.
August 22, 1997.
Rehearing Denied October 9, 1997.
*23 George Vega, Jr. and Thomas Wood of Vega, Stanley, Zelman & Hanlon, P.A., Naples, and Robert F. Kohlman of Law Offices of Robert F. Kohlman, Miami, for appellant/cross-appellee.
David A. Townsend and Anita C. Brannon of Townsend & Brannon, Tampa, and Alan C. Sundberg, Sylvia H. Walbolt and Ronald J. Tenpas of Carlton, Fields, Ward, Emmanuel, Smith & Cutler, P.A., St. Petersburg, for appellee/cross-appellant.
CAMPBELL, Judge.
Appellant, Carol Ann May (Mrs. May), challenges a final judgment awarding appellee, Sessums & Mason, P.A. (Sessums), $564,500 as an "additional fee" for representing its former client, Mrs. May, in her dissolution of marriage action. Stephen W. Sessums was the partner of Sessums & Mason, P.A. that was retained by Mrs. May to represent her. Sessums cross-appeals the failure of the trial judge to award Sessums the full $1,000,000 in "additional fees" that it had requested of Mrs. May and for which sum it brought this action in the court below. Mrs. May had already paid Sessums fees in the amount of $239,000 that Sessums computed and billed during the course of the representation of Mrs. May. Those fees of $239,000 were billed on an hourly basis as set forth in the written contract between the parties, with Stephen W. Sessums billing for his service at the "enhanced" rate of $300 per hour. Based upon the conclusions we make and will hereinafter explain, we reverse the final judgment on Mrs. May's appeal and affirm on Sessums' cross-appeal.
Mrs. May and her former husband had been married approximately twenty-eight years when Mrs. May filed her dissolution action in Collier County on June 28, 1991. Mrs. May was represented by counsel other than Sessums from the beginning of her dissolution action until April 22, 1992, the date she signed a retainer agreement prepared by Sessums. When Mrs. May signed the retainer agreement after it was mailed or faxed to her, through other out-of-state counsel, she had met Stephen W. Sessums for one conference which lasted several hours over dinner at Tampa International Airport on April 7, 1992. That meeting with Mr. Sessums was arranged by out-of-state counsel for Mrs. May who accompanied her to the meeting with Mr. Sessums. At that time, a trial date had been set for the dissolution proceedings in late July 1992. The trial of the dissolution action actually took place in Collier County between the date of September 30, 1992 to October 2, 1992. The original final judgment in the dissolution action was entered on December 5, 1995. There was no appeal of that final judgment by which Mrs. May was awarded assets accrued during the marriage in the approximate amount of $19,335,000. Mr. May was awarded assets of approximately $24,921,000. Each party was responsible for paying their own attorney's fees.
After Mrs. May's initial conference with Mr. Sessums at the Tampa airport, the written retainer agreement was sent to her, signed by her and sent back to Mr. Sessums. There was no further discussion of their fee arrangement until after the original final judgment of dissolution was entered. Neither Mr. Sessums, nor anyone in his law firm, ever attempted to explain the document as drafted to Mrs. May. That written retainer agreement as drafted by Sessums provides in its essential parts as follows:
I, CAROL ANN MAY, do hereby retain Sessums & Mason, P.A., as my attorneys and they agree to represent me and to perform all legal services reasonably necessary in connection with:
MAY DISSOLUTION OF MARRIAGE
It is understood and agreed that I employ Sessums & Mason, P.A., and they accept employment as my attorneys, upon the following terms and conditions:
After the Final Judgment is entered in this case, I understand that an additional attorney's fee may be requested based upon the following considerations:
(a) The time and labor required, the novelty, complexity, and difficulty of the questions involved, and the skill required to perform the legal service properly;

*24 (b) The likelihood that the acceptance of the particular employment will preclude other employment by the lawyer;
(c) The significance of, or amount involved in, the subject matter of the representation, the responsibility involved in the representation, and the results obtained;
(d) The time limitations imposed by me or by the circumstances and, as between attorney and client, any additional or special time demands or requests of the attorney by me;
(e) The nature and length of the professional relationship; and
(f) The experience, reputation, diligence, and ability of the lawyer or lawyers performing the service and the skill, expertise or efficiency of effort reflected in the actual providing of such services.
The final bill will be determined at the conclusion of my case based upon the consideration set forth above but will be subject to discussion and agreement with me prior to such bill being tendered. Monthly interim bills will be rendered on a time basis only and shall apply toward the final attorney's fee to be billed at the conclusion of the representation. Interim statements will be rendered at the hourly rate then in effect for those employees of the firm who perform the work.
Present hourly rates for firm employees are:

Stephen W. Sessums $300.00
Miriam E. Mason 250.00
Caroline A. Kapusta 150.00
Mary L. McGinnis 85.00
Deb Reed 85.00
Kimberly R. Doeschler 85.00

Lawyers and Legal Assistants who join the firm after the date of this agreement shall be billed at their normal hourly rate.
Hourly rates shall be subject to change and increase effective January 1st of each year, provided that notice thereof is given me on or before November 30th of the preceding year.
Costs which are billed to you are all out-of-pocket costs incurred, such as court reporter fees, filing fees, photocopying expense, long distance calls, appraisers, accountants, and other similar expenses as they are incurred.
Statements for attorney's fees and costs will be rendered monthly. All bills shall be due when rendered and payable in full within twenty (20) days. All unpaid bills shall bear interest at the rate of 1-1/4% per month on the unpaid balance.
If bills are not paid when due, or a mutually agreeable payment schedule is not made and adhered to, I agree that my attorneys may withdraw as my counsel in any proceeding in which they represent me. Also, I agree to bear the cost of collection including a reasonable attorney's fee, and all other costs. I waive the right to a jury trial in any action related to the collection of payments due under this agreement.
I understand that this agreement covers legal representation only through trial, final hearing, final judgment and motions for rehearing, if any. It does not include appeals, post-judgment, contempt, petition for modification of final judgment, or any other post-trial proceedings. If work is performed on my behalf or at my direction or to complete all tasks necessary as indicated in any final judgment, and to close my file in accordance with Sessums & Mason, P.A. normal closing procedures, I agree to pay a reasonable fee for such work, which fee shall be no less than the number of hours for services performed times the normal hourly rate in effect for firm employees who perform the work. I also agree to pay any out-of-pocket costs incurred in connection with such post judgment work.
Sessums & Mason, P.A., is hereby granted an attorney's fee charging lien on all real and personal property, monies, including lump sum or periodic alimony, any assets, or other things of value which are recovered, obtained, preserved or protected for me in this lawsuit, and any fees I am required to pay shall be paid out of any recovery or the assets preserved and protected for me. In the event Sessums & Mason, P.A., is discharged or withdraws as my attorneys before completion of any suit *25 that is filed, prior to any substitution they shall be entitled to obtain an order protecting their right to a charging lien, and to have the amount of their fee and the costs incurred determined in the same action before the suit is dismissed or concluded.
The attorney is an officer of the court and is bound by the rules regulating The Florida Bar. The client acknowledges and understands that while the attorney accepts this employment and promises to render professional legal services to the best of their ability during the continuation of this employment, that the attorney makes no warranties, representations or guarantees regarding the favorable outcome, result or successful termination of the representation and that this Retainer Agreement is not "contingent" thereon.
At the conclusion of the dissolution proceedings, without an agreement by Mrs. May as to any additional fees, Sessums billed Mrs. May for an "additional" fee of $1,000,000. When Mrs. May refused to pay the additional fee, having paid $239,000 in hourly billings, Sessums filed suit against her seeking to recover the additional $1,000,000 on both breach of contract and quantum meruit theories.
We conclude that Mrs. May, in executing the written agreement with Sessums, did not contractually bind herself to pay Sessums an "additional" fee and, therefore, cannot be liable for a breach of contract action when she refused to pay such a fee. We further conclude that having specifically contracted to pay fees on an hourly basis for Sessums to represent her, and having paid Sessums pursuant to that contract fees of $239,000, Mrs. May cannot be, and is not, liable on an implied contract or quantum meruit theory to pay additional fees. We decline to take this case beyond a strict construction of the contract. Deciding this case on the basis of a pure question of law and the construction of a written contract, the trial judge's rulings do not carry the great weight of the normal presumption of correctness. Furthermore, because the contract at issue is so clearly and precisely drawn in permissive rather than obligatory terms, we have concern, in view of the experienced attorneys involved, as to whether the lack of more precise obligatory language regarding any additional fee was deliberate. Whatever the intent of the drafters, we construe the contract in Mrs. May's favor and against its drafter, Sessums. See Brass v. Reed, 64 So.2d 646 (Fla.1953); Planck v. Traders Diversified, Inc., 387 So.2d 440 (Fla. 4th DCA 1980), rev. denied, 394 So.2d 1153 (Fla.1981); Reid v. Johnson, 106 So.2d 624 (Fla. 3d DCA 1958), cert. denied, 112 So.2d 9 (Fla.1959).
The trial judge construed the contract at issue as containing a latent ambiguity and permitted introduction of parol evidence to explain and interpret the contract and intent of the parties. Both Mrs. May and Sessums argue, albeit for different reasons, that the contract is not ambiguous. Sessums argues that the contract clearly requires Mrs. May to pay a reasonable additional fee for which she is required to "reasonably agree." Mrs. May, on the other hand, argues that the contract is clear that any "additional" fee would be a voluntary act upon her part subject solely to Mrs. May's agreement to pay any "requested" additional fee. We agree with Mrs. May. To agree with Sessums requires adding language to the contract that the drafter chose not to use. Agreeing with both Mrs. May and Sessums that the contract is not ambiguous, we conclude that the trial court erred in receiving parol evidence.
While the parties have ably, and at considerable length, argued many issues; i.e., the legality of a "result oriented" or contingent fee contract between attorney and client in a marriage dissolution case; the law as it pertains to patent and latent ambiguities in contracts; whether discretion was abused by the trial judge in determining the amount of any additional fee due; improper venue; significance of any results achieved by Sessums; and other issues, we are not called upon to address those issues due to the conclusion we reach.
The trial judge correctly concluded that "[i]t is undisputed that, at a minimum, the Retainer Agreement provided hourly rates for attorney's fees. The crux of this case is whether the Agreement also obligated *26 MAY to pay SESSUMS, P.A., an additional attorney's fee to be determined at the conclusion of the dissolution proceeding." The trial judge erroneously concluded, however, that the contract obligated Mrs. May to pay an "additional" fee and that she breached that obligation by refusing to pay any additional fees. In the first place, the contract does not, in obligatory language, require Sessums to submit a statement for "additional" fees but, to the contrary, provides only that "an additional fee may be requested." (Emphasis supplied.) Furthermore, the contract is clear and precise in providing, again in non-obligatory terms, that in the event an "additional" fee is "requested," it would only be billed to Mrs. May "subject to discussion and agreement with me (Mrs. May) prior to such bill being tendered." (Emphasis supplied.) That condition was never fulfilled. Mrs. May never agreed to an additional fee yet, lacking such agreement, Sessums tendered a bill for an additional fee of $1,000,000. We are constrained to view the contract at issue here as did the court in John Alden Life Insurance Company v. Benefits Management Associates, Inc., 675 So.2d 188 (Fla. 3d DCA 1996).
The John Alden court had before it a contract that provided for a bonus to be negotiated by the parties in the future according to contractual terms that stated: "Based upon the performance of the SPO, that the independent contractor conceptualized and helped develop, a separate bonus will be negotiated." The John Alden court construed that provision to be an unenforceable "agreement to agree" in the future. In fact, the contractual provision in John Alden is more obligatory than the provisions in the contract between Mrs. May and Sessums because the John Alden contract provides that the separate bonus "will be negotiated." (Emphasis supplied.) Moreover, the John Alden court refused to recognize a claim for the "additional" bonus on a quantum meruit theory because "the subject bonus would be additional remuneration for services for which John Alden had already paid in full under a contract."
Sessums relies most heavily on the decision of this court in E.H. Crump of Florida, Inc. v. Aikin, 571 So.2d 1353 (Fla. 2d DCA 1990) for the contrary position that every "agreement to agree" is not unenforceable. Sessums misconstrues the import of Crump. The Crump fee agreement clearly and in obligatory language provided that a fee would be paid. The Crump agreement merely provided three different alternatives to arrive at the amount of the fee that was agreed to be paid. The problem with the Sessums/May agreement is that it does not obligate Mrs. May to pay an additional fee, regardless of how it might be calculated or determined. In further contrast to the Crump agreement, the Sessums/May agreement and the dispute over it relates to additional fees over and above substantial compensation for services already paid.
The John Alden decision is not a single point of light shining in the wilderness of contract law. Other reliable authorities reach the same conclusion. Both of the leading treatises on contract law recognize the John Alden principle. 1 Williston on Contracts, § 4:26, at 585 (Richard A. Lord, Fourth ed.1990) states the principle as follows:
Although a promise may be sufficiently definite when it contains an option given to the promisor or the promisee, if an essential element is reserved for the future agreement of both parties, as a general rule the promise can give rise to no legal obligation until such future agreement. [Footnote omitted.] Since either party in such a case may, by the very terms of the promise, refuse to agree to anything to which the other party will agree, it is impossible for the law to affix any obligation to such a promise. [Footnote omitted.]
1 Corbin on Contracts, § 4.3, at 567 (Joseph M. Perillo, Rev. ed.1993) states the rule as follows:
In the process of negotiating an agreement, a term that is frequently left indefinite and to be settled by future agreement, or by some other specified method, is the price in moneythe compensatory exchange for the subject matter of purchase. This is true both of agreements for the rendition of service [footnote omitted] and of those for the purchase, sale, or leasing *27 of realty [footnote omitted] or goods. [Footnote omitted.] If the parties provide a practicable method for determining this price or compensation there is no such indefiniteness or uncertainty as will prevent the agreement from being an enforceable contract. The same is true if they agree upon payment of a "reasonable" price or compensation. [Footnote omitted.] There are cases, however, in which it is clear that the parties have not expressly or implicitly agreed upon a "reasonable price," and also have not prescribed a practicable method of determination. Where this is true, the agreement is too indefinite and uncertain for enforcement. [Footnote omitted.]
Sessums argues, assuming a binding obligation to pay an additional fee which we find did not exist, that their contract, by listing factors (a) through (f) as "considerations" in determining a fee, complies with Corbin`s approval of such an agreement "[i]f the parties provide a practicable method for determining this price or compensation." Again, we cannot agree. As we have concluded, Sessums and Mrs. May did not expressly or implicitly agree that Mrs. May would be obligated to pay a "reasonable fee"the first prong of the Corbin test. Even so, while the "considerations" of the Sessums/May contract may be meaningful to Mr. Sessums or other attorney experts, they provide little, if any, practicable method by which Mrs. May could relate them to any proposed fee. The client in such a case is left to the mercy of the contracting attorney and those experts qualified to opine as to the attorney's worth. See further Suggs v. Defranco's, Inc., 626 So.2d 1100 (Fla. 1st DCA 1993) ["Where essential terms of an agreement remain open, subject to future negotiations, there can be no enforceable contract"]; Truly Nolen, Inc. v. Atlas Moving & Storage Warehouses, Inc., 125 So.2d 903 (Fla. 3d DCA 1961), cert. discharged, 137 So.2d 568 (Fla. 1962).
On the issue of the adequacy of the Sessums/May contract to obligate Mrs. May to any additional fee, we find the case of Fremon v. W.A. Sheaffer Pen Co., 209 F.2d 627 (8th Cir.1954), even though it dealt with an oral contract, particularly valuable and instructive. The issue before the court in Fremon was whether a contract sufficiently provided for the manner in which compensation was to be determined and paid. The Fremon court held:
It is plaintiff's contention that the contract was complete, save only for the amount of compensation to be paid plaintiff and DeHaven. If this analysis is correct, it follows that the court or a jury in a proper case could supply that. However, it is apparent that more is involved than the amount of compensation. The basis for determining the amount of compensation was to be determined by a future agreement to be arrived at by the parties "when the Wahl interference is settled." Then the parties were "to consider everything that has occurred after now and up to that time, and upon considering that we are to agree what ... was the fair value of the rights which were conveyed to the Sheaffer Company by the Fremon and DeHaven assignment of 1926." Upon that basis "fair compensation for the value of those rights ..." was to be estimated.

Clearly more than the amount of compensation was left for future determination. Neither a court nor a jury is authorized to guess what values Fremon and Sheaffer might have placed upon all the factors which were left for their consideration in arriving at a basis on which to determine "fair compensation" for the value of those rights. The authorities cited and relied upon by the court are in point; and there are many others. Lynn v. Richardson, 151 Iowa 284, 288, 130 N.W. 1097; Williston on Contracts (Rev.Ed., 1936), Vol. I, § 45, p. 131; Gunn v. Newcomb, 82 Iowa 468, 48 N.W. 989; National Bank of Kentucky v. Louisville Trust Co., 6 Cir., 67 F.2d 97, 102. The law is tersely stated in Richmond Screw Anchor Co., Inc. v. Umbach, 7 Cir., 173 F.2d 532, 534, as follows:
"Where an essential element of a contract is reserved for future agreement, no legal obligation as to such element arises until such future agreement is made." Citing authorities.
209 F.2d at 631, 632 (emphasis supplied).
Having concluded that Mrs. May did not breach her contractual relationship with *28 Sessums, we now turn to discuss our further conclusion that neither is she liable to Sessums on an implied contract or quantum meruit theory. Important to this discussion is the continued realization that what Sessums sought from Mrs. May was "additional" compensation in a case in which fees of $239,000, based upon generous hourly fee rates, had already been paid.
As this court held in Corn v. Greco, 694 So.2d 833 (Fla. 2d DCA 1997):
Quantum meruit damages cannot be awarded upon the singular determination that the requesting party is deserving. There are constraints upon the availability of such reliefherein, the existence of an enforceable contract. Hazen v. Cobb, 96 Fla. 151, 117 So. 853, 858 (Fla.1928); Kovtan v. Frederiksen, 449 So.2d 1 (Fla. 2d DCA 1984); In re Estate of Lonstein, 433 So.2d 672, 674 (Fla. 4th DCA), review denied, 441 So.2d 632 (Fla.1983). Quantum meruit relief is founded upon the legal fiction of an implied contract. This fiction cannot be maintained, however, when the rights of the parties are described in a written contract. See Hoon v. Pate Constr. Co., 607 So.2d 423, 427 (Fla. 4th DCA 1992), review denied, 618 So.2d 210 (Fla.1993). We must, therefore, reverse the final judgment to this extent. [Footnote omitted.]
In Kovtan v. Frederiksen, 449 So.2d 1 (Fla. 2d DCA 1984), we recognized that "[i]t is well settled that the law will not imply a contract where an express contract exists concerning the same subject matter." Perhaps even more pertinent to the circumstances of this case is Hoon v. Pate Construction Company, Inc., 607 So.2d 423 (Fla. 4th DCA 1992), rev. denied, 618 So.2d 210 (Fla.1993), an appeal that involved directed verdicts for a defendant on breach of contract and quantum meruit claims. The Hoon court, in sustaining the directed verdicts, held as follows:
We agree that the appellants were entitled to a judgment on the pleadings or a directed verdict on the breach of contract claim set out in the pleadings. Further, we have been cited to no circumstances in this case that would invoke the principles of implied contract. Ordinarily, contracts may be implied in order to justify payments for services rendered or goods provided under circumstances where there is no express contract. Aldebot v. Story, 534 So.2d 1216 (Fla. 3d DCA 1988); Symon v. J. Rolfe Davis, Inc., 245 So.2d 278 (Fla. 4th DCA), cert. denied, 249 So.2d 36 (Fla. 1971). We fail to see how this principle applies to the breach of contract claim asserted by Pate here. This is a situation where the rights of the parties are set out in written documents. Ordinarily, an implied contract will not be recognized when there is a writing dealing with the same subject. See, e.g., Matter of Penn Cent. Transp. Co., 831 F.2d 1221, 1229 (3d Cir. 1987); Klebe v. United States, 263 U.S. 188, 191, 44 S.Ct. 58, 59, 68 L.Ed. 244 (1923). To recognize an implied contract in a situation where the parties agree that the written document provides that the owner may "reject a bid for any reason" would be to emasculate the effect of that provision.

We conclude that the trial court should have granted a judgment on the pleadings or directed a verdict for the defendants on breach of contract.
607 So.2d at 426, 427 (emphasis supplied). We conclude that Sessums is not entitled to relief on a quantum meruit theory.
This is an unfortunate case for the legal profession. Regardless of the outcome of these proceedings, this case, in all likelihood, will, justifiably or not, cause some segments of the legal profession to suffer further disrepute. This is particularly unfortunate because the disputes at issue could clearly have been avoided by a more carefully drawn contract document which the experienced attorneys involved were fully capable of preparing. There was considerable testimony in the trial proceedings below regarding the expertise and sophistication of the leading members of the matrimonial and family law bar of Florida. A colleague of Mr. Sessums and a member of the matrimonial and family law bar of some reputation testified on Mr. Sessums' behalf and introduced his own retainer agreement. Without expressing approval or disapproval of it otherwise, we *29 quote parts of that contract here below to demonstrate the contrast with Mr. Sessums' document and what could have been provided if Mrs. May was to knowingly enter into an obligatory arrangement as to additional fees.
(8) The monthly billings shall constitute the minimum amounts for which you shall be billed and as such will be computed upon an hourly rate only. The final billing, which may include an additional amount beyond the calculation for time expended, shall be computed in accordance with that set forth below in paragraph (9).
(9) The final billing will be based on the hourly rate as set forth above and, in addition, the results accomplished, the amount involved in any controversy, the novelty and difficulty of the matter, the skill required to perform the legal services properly, the time limitations imposed by our client or by the circumstances and the experience, reputation and ability of the lawyer or lawyers performing the services for the adverse party or parties. When we submit our final bill, you agree to pay us within ten (10) days from the date thereof; except, however, if you feel that any additional fee over and above the hourly rate is not reasonable considering all the factors involved, then you and we agree that such additional fee over and above the minimum hourly fees shall be settled by a panel of three (3) arbitrators, all of whom are lawyers who are Board Certified in Marital and Family Law by The Florida Bar, one of whom shall be selected by you, one by us and the third by the two already selected, and you and we agree that the award of the arbitrators shall be accepted as the final determination of the matter.
Reversed and remanded with instructions on remand that judgment be entered for Mrs. May.
PARKER, C.J., and QUINCE, J., concur.